**UNITED STATES of America**

**v.**

**JOHNSON, Richard, Appellant.**

No. 86–5353.

United States Court of Appeals,
Third Circuit.

Argued Dec. 18, 1986.

Decided April 24, 1987.

As Amended May 13, 1987.

warned that exploration of the circumstances of a certain polygraph examination might result in admission of evidence of the examination for purposes of rebuttal. Two days into the trial, the prosecution provided the defense copies of two reports which indicated that appellant's fingerprints were not found on certain equipment. Although appellant made use of the reports, he was subsequently convicted on two counts of bank robbery in violation of 18 U.S.C. 2113(b) (1982) and sentenced. Because we find that the district court's denial of appellant's motion did not constitute reversible error, and because we find that the district court's other allegedly erroneous actions were proper, we will affirm the the district court's judgment of conviction. Because the district court did not, however, make the factual findings necessary to impose appellant's sentence, we will vacate that sentence and remand the case to the district court for further fact-finding.

Sidney S. Kanter, Irvington, N.J., for appellant.

Thomas W. Greelish, U.S. Atty., Stuart A. Rabner, Asst. U.S. Atty., Newark, N.J., for appellee.

Before HIGGINBOTHAM and BECKER, Circuit Judges, and DUMBAULD, District Judge.[*]

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from a judgment of conviction against appellant, Richard Johnson. Before trial, appellant moved to suppress oral and written confessions he made to agents of the United States Secret Service who were investigating the disappearance of a total of $20,000 from two armored-car shipments. The district court denied defendant's motion in an opinion rendered from the bench on March 19, 1986. Also before trial, appellant was

### I.

The Coin Depot ("Coin Depot") of Elizabeth, New Jersey is an armored car carrier company. On August 13, 1985, Coin Depot carried several sacks of money from First Fidelity Bank of Union City, New Jersey to the Federal Reserve Bank ("Federal Reserve"). Later, on August 27, 1985, Coin Depot carried several sacks of money from First Jersey Bank of Jersey City, New Jersey to the Federal Reserve. Appellant Richard Johnson and another Coin Depot employee, Douglas Amidon, acted as guards for both shipments. After receiving the shipments, the Federal Reserve reported to Coin Depot that $10,000 was missing from each. In response to the Federal Reserve's report, the United States Secret Service ("Secret Service") conducted an investigation. As a part of the investigation, Special Agent Timothy H. Johnson of the Secret Service questioned several bank employees about the missing funds. Special Agent Johnson also spoke to appel-

---

[*] Honorable Edward Dumbauld, Senior Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

lant Richard Johnson about the funds at Coin Depot offices on Thursday, September 12, 1985. At that time, appellant Johnson acknowledged that he had been a member of the August 13, 1985 and August 27, 1985 truck crews but denied any involvement in the alleged thefts. Appellant Johnson also acceded to Special Agent Johnson's request that appellant submit to a polygraph examination the following week.

On September 16, 1985, Appellant Johnson went to the Secret Service office in East Orange, New Jersey. There, appellant Johnson met with Special Agent Johnson and Special Agent Thomas Grupski. Grupski provided appellant Johnson with two forms. The first set forth *Miranda* warnings and contained statements that the suspect understood and freely waived his rights.[1] The second contained statements that the suspect freely submitted to a polygraph examination.[2] The words "Polygraph Examination" were printed at the top of each form in bold type approximately twice as large as the type used in the remainder of the form. Agent Grupski read the first form and then the second aloud to appellant Johnson, asking after each reading if appellant understood the contents. Appellant Johnson each time

stated he did, signing the first form and then the second. Special Agent Johnson witnessed the signing of both forms.

Grupski then administered the polygraph examination. Special Agent Johnson moved to an adjacent room from which he and another agent, Craig Carlson, observed appellant, with appellant's knowledge, through a one-way mirror. Grupski posed two questions to appellant: (1) "Did you take any of the money from any of those Fed bags?" and (2) "Do you know for sure who took any of the money from any of those Fed bags?" Appellant Johnson responded in the negative to both questions. Grupski then stated to appellant that the test indicated deception. Appellant denied his involvement and expressed amazement at the test result. Agent Grupski then repeatedly asked appellant during the next fifteen minutes whether appellant had taken the money. Appellant eventually confessed to stealing the money.

After this initial oral confession, Grupski left appellant, who was taken to an adjacent room by Special Agent Johnson. Special Agent Johnson presented appellant with another form which, like the first form appellant signed, set forth *Miranda* warnings.[3] Unlike the first two forms,

1. The first form given appellant was marked "Polygraph Examination: Warning of Rights and Consent to Speak" and provided:

    Before I ask you any questions, you must understand your rights.
    You have the right to remain silent.
    Anything you say can be used against you in a Court, or other proceedings.
    You have the right to talk to a lawyer for advice before I question you and to have him with you during questioning.
    If you cannot afford a lawyer and want one, a lawyer will be appointed for you by the Court. If you decide to answer questions now without a lawyer present, you will still have the right to stop the questioning at any time.
    I have read this statement of my rights and it has been read to me, and I understand what my rights are.
    I voluntarily waive my rights and I am willing to answer questions at this time.

2. The second form given to appellant was marked "Polygraph Examination: Statement of Consent" and provided:

    I _____, of my own free will, voluntarily and without duress, threats or promises, here-

by, consent to be interviewed and submit to a Polygraph Examination in connection with an investigation concerning

---

I understand that the questions to be asked on the test will be reviewed with me prior to the examination.
I represent that I am in good mental and physical condition and know of no mental or physical problem which would impair my ability to be examined by polygraph.
I also understand that I do not have to take a Polygraph Examination and that even after consenting to do so, I can stop the interview and the test at any time.
The examination (does/does not) contain audio/visual devices for monitoring.

3. The third form given to appellant had two parts, the first of which was marked "Warning and Consent to Speak: Warning of Rights." The first part provided:

    You must understand your rights before we ask you any questions.
    You have the right to remain silent.
    Anything you say can be used against you in court, or other proceedings.

however, the third form made no mention of a polygraph examination. Appellant signed the form and then subsequently wrote and signed confession with Special Agent Johnson's assistance. Appellant later led Special Agent Johnson to appellant's home and produced $6,000 in cash for the agent.

Before trial, appellant sought to suppress evidence of his confessions on grounds that he was not given adequate *Miranda* warnings and that the confessions were not voluntary. In an opinion dated March 19, 1986, the district court found that the Secret Service's *Miranda* warnings to appellant were adequate and that appellant's confessions were voluntary. The court therefore denied appellant's motion. Also before trial, the government stated its intention not to introduce evidence of the polygraph examination. The district court stated, however, that if appellant attempted to demonstrate that the confessions were coerced by introducing evidence of the circumstances of the examination, the government would be permitted to rebut appellant's assertion by introduction of evidence concerning the circumstances of the exam. *See* App. at A–77–86. Subsequently, on the trial's first day, the government acquired two fingerprint reports. *See Id.* at A–120–21. The government provided the defense with copies of the reports on the trial's second day, which preceded cross-examination of all government witnesses. Later, appellant's written confession and testimony concerning appellant's oral confession were introduced as evidence.

Appellant was thereafter convicted on both counts and received a sentence of five years' imprisonment and $10,000 restitution on the first count and five years' probation and $4,000 restitution on the second, the restitution to be paid to the Coin Depot. This appeal followed.

## II.

Appellant asserts four claims. First, appellant contends that he did not voluntarily, knowingly and intelligently waive his *Miranda* rights prior to his oral and written confessions. Second, appellant asserts that the district court's statement that it would permit introduction of rebuttal evidence if appellant sought to use the circumstances of the polygraph examination to show that the confessions were coerced impermissibly restricted appellant's ability to cross-examine witnesses and thus violated the sixth amendment. Third, appellant asserts that the government's failure to provide the fingerprint reports prior to trial denied him due process under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1967). Finally, appellant asserts that the district court abused its discretion in imposing the sentences it imposed on appellant. We will consider these claims in the order set forth above.

## III.

Had the government introduced only appellant's initial oral confession, this case might pose serious questions under *Miranda*. Appellant advances a substantial argument that the circumstances of this case demonstrate that appellant's initial waiver of *Miranda* rights was not fully effective.[4] We need not, however, address

You have the right to talk to a lawyer for advice before we question you and to have him with you during questioning.

If you cannot afford a lawyer and want one, a lawyer will be appointed for you by the court. If you decide to answer questions now without a lawyer present, you will still have the right to stop the questioning at any time. You also have the right to stop the questioning at any time until you talk to a lawyer.

I have read this statement of my rights and it has been read to me, and I understand what my rights are.

The second part, marked "Waiver," provided:

I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or force of any kind has been used against me. I hereby voluntarily and intentionally waive my right to remain silent and my right to have an attorney at this time. I am willing to make a statement and answer questions.

4. Essentially, appellant asserts that he did not knowingly and intelligently waive his rights as to the post-polygraph examination questioning by signing the initial waiver form since he believed he was submitting merely to an examina-

this potentially troublesome issue since events subsequent to appellant's initial waiver of rights and confession negate the legal significance of the federal investigator's initial administration of *Miranda* warnings.

■ After appellant's post-polygraph examination confession, Special Agent Johnson took appellant to a room adjacent to the one in which the examination was given and advised him of his *Miranda* rights. Appellant was read and signed a general waiver form which did not suggest a limitation of waiver. Appellant then proceeded to confess orally and later to write a confession on a form which set forth *Miranda* warnings. In addition to signing the confession form, appellant indicated at the form's top that he waived the rights the form set forth. Appellant does not assert that the *Miranda* warnings which preceded the second confession were inadequate or misleading. Nor would the record appear to support such an assertion. Further, there is no serious suggestion that either confession was involuntary in the sense that it was elicited by threats of violence, deceit, unduly lengthy interrogation or im-

proper promises. Absent constitutionally impermissible coercion in eliciting an initial confession, the administration of adequate *Miranda* warnings before a subsequent voluntary confession validates that confession despite the fact that the earlier confession is inadmissible because the *Miranda* warnings that preceded it were inadequate. *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). In *Elstad,* the Court specifically rejected the proposition that the "fruit of the poisonous tree" doctrine, which in the fourth amendment context requires the exclusion of evidence or confessions obtained as a result of a constitutional violation, extends to violations of the *Miranda* decision. *Id.* at 309, 105 S.Ct. at 1293. Rather, the Court concluded that *Miranda* requires only that the circumstances surrounding a subsequent confession be evaluated to determine whether the confession was knowing and voluntary. The Court held further that a suspect's subsequent choice to waive his or her rights after a proper administration of *Miranda* warnings should ordinarily suffice to dissipate the coercive impact of the earli-

tion and not to any post-examination interrogation. Without deciding the issue, we express some concern about the scope of appellant's initial waiver. *Wyrick v. Fields,* 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982) (per curiam), establishes that the validity of a post-polygraph examination waiver depends upon the totality of the circumstances under which the waiver is effected. Subsequent federal case law shows that among the most significant circumstances to be considered are whether the suspect has consulted with counsel, whether the suspect has requested the examination, and whether the waiver form initially presented to the suspect clearly indicates that post-examination questioning is a possibility. *See United States v. Gillyard,* 726 F.2d 1426, 1429 (9th Cir.1984). Here, appellant did not request the examination and thus cannot be said to have "evinced a willingness and a desire for a generalized discussion about the investigation." *Oregon v. Bradshaw,* 462 U.S. 1039, 1046–47, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983). Appellant was also uncounseled and thus cannot be presumed to have received competent legal advice which clarified any ambiguities concerning the examination. Finally, appellant signed waiver forms which strongly suggested that the waiver of rights was applicable only to the polygraph examination. *See* App. at A–226–27. Significantly, *Miranda* warnings may be selectively invoked or waived. *See Stumes v. Solem,* 752 F.2d 317 (8th Cir.1985)

(suspect invoked right to counsel during polygraph examination by refusing to take exam without attorney but did not by this refusal invoke right to counsel as to the non-polygraph questioning); *United States v. Thierman,* 678 F.2d 1331 (9th Cir.1982) (suspect may selectively waive rights by responding to certain questions but not others). We are hesitant to accept the government's assertion that a young man who had no previous exposure to the criminal justice system and who had acceded to a request for submission to a specific examination without the benefit of counsel unambiguously waived all his *Miranda* rights by signing waiver forms boldly captioned "Polygraph Examination." Our reservations are made more grave by the heavy burden the government bears in establishing a full and effective waiver. *See United States v. Hernandez,* 574 F.2d 1362 (5th Cir.1978). For the reasons set forth in the remainder of this opinion, however, we will not consider the scope of the initial waiver.

Judge Becker does not share the reservation expressed in this footnote. He believes that the initial waiver form, the text of which contains the full *Miranda* warning, was adequate and that the district court's findings of voluntariness with respect to the post-polygraph questioning are fully supported.

er confession and to demonstrate knowledge and voluntariness. *Id.* at 311, 105 S.Ct. at 1294.

■ Here, appellant effected a valid waiver before giving his written confession. No exceptional circumstances suggest that the confession was not voluntary. That confession was thus admissible at trial under *Elstad.* Where a subsequent confession is obtained constitutionally, the admission of prior inadmissible confessions may constitute harmless error. *See Bryant v. Vose,* 785 F.2d 364 (1st Cir.1986) (admission of oral confession obtained in violation of *Miranda* harmless error where subsequent, constitutionally obtained written confession admitted and strongly indicated guilt); *United States v. Packer,* 730 F.2d 1151 (8th Cir.1984) (admission of statements obtained in violation of *Miranda* harmless error where constitutionally obtained, subsequent statements reiterated earlier statements and strongly indicated guilt). Here, the admission of testimony concerning appellant's initial oral confession, if violative of *Miranda,* constitutes harmless error. As in *Bryant v. Vose,* the jury here "learned no more from the improperly admitted confession than it did from the properly admitted one," *Bryant,* 785 F.2d at 367, since the oral and written confessions set forth essentially the same story. Indeed, the admissible written confession was clearly the stronger piece of confession evidence since its credibility could hardly be attacked, unlike the credibility of an investigator testifying about an oral confession. Since the written confession was in any event admissible, and since testimony concerning appellant's oral confession was thus at most cumulative, *see id.,* we will not consider the sufficiency of the initial *Miranda* warnings. We will hold simply that the written confession obtained from defendant, which undoubtedly was the most significant piece of confes-

sion-related evidence, was admissible, that the admission of the oral confession under the circumstances was thus at most harmless error, and that therefore appellant has no cognizable claim concerning his confessions.

## IV.

■ Appellant's sixth amendment argument is unpersuasive. Appellant asserts that the district court impermissibly restricted appellant's ability to cross-examine witnesses concerning the voluntariness of appellant's confession by stating it would allow the government to introduce rebuttal evidence concerning the polygraph examination if appellant attempted to use the circumstances attending the polygraph examination to show coercion.[5] Appellant's assertion ignores the fact that the district court never prevented appellant from asking specific questions on cross-examination. Rather, the district court simply informed appellant's counsel that certain questions might result in the government's submission of certain evidence concerning the polygraph examination. Since case law shows that evidence concerning a polygraph examination may be introduced to rebut an assertion of coercion of a confession, *see United States v. Kampiles,* 609 F.2d 1233, 1245 (7th Cir.1979), the district court correctly instructed appellant's counsel as to possible consequences of his actions and clearly could have admitted the polygraph evidence if appellant had "opened up" the issue of the circumstances of the examination. In light of the trial court's substantial discretion to shape cross-examination, *see Government of the Virgin Islands v. Blyden,* 626 F.2d 310 (3d Cir.1980), we cannot conclude that the district court violated the sixth amendment by informing appellant's counsel that it would

---

**5.** We deal here solely with tactical decisions made by defendant and his counsel. Exercising his constitutional right, appellant did not testify. Of course, if he had testified as to the circumstances surrounding his confessions, appellant would have been subject to cross-examination. Obviously, appellant wished to avoid such confrontation. Instead, appellant sought the oppor-

tunity to explore the circumstances surrounding the confession through cross-examination of government agents without any risk of refutation or adverse evidentiary consequence. While appellant shrewdly sought a strategically advantageous result, it was not a result required by case law.

permit proper rebuttal evidence to certain cross-examination.

## V.

▉▉▉ Appellant's *Brady* argument is also unpersuasive. Appellant asserts that the government contravened *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1967), by failing to provide two fingerprint reports prior to trial. *Brady* and its progeny hold that due process requires the prosecution turn over to the defense all inculpatory evidence requested and all exculpatory evidence even if unrequested. Assuming that the fingerprint reports were exculpatory,[6] the government's provision of the reports was consistent with *Brady.* Appellant had access to the reports before any cross-examination took place and referred to the reports when cross-examination did take place. *See* App. at A–151–57. Appellant eventually introduced the reports as evidence and argued to the jury that the reports indicated that appellant was not guilty. *See* Supp.App. at 5–11. The district court even precluded the government from presenting expert testimony concerning the report's significance so that the possibility of unfairness to appellant resulting from the timing of the government's provision of the reports would be minimized. Where the government makes *Brady* evidence available during the course of a trial in such a way that a defendant is able effectively to use it, due process is not violated and *Brady* is not contravened. *See United States v. Peters,* 732 F.2d 1004 (1st Cir.1984) (*Brady* not contravened where government disclosed evidence on trial's fourth day and defendant was able to cross-examine witnesses on and make full use of evidence); *United*

*States v. Clark,* 538 F.2d 1236 (6th Cir. 1976) (disclosure of negative fingerprint report to defense on trial's third day consistent with *Brady* where report was later disclosed to jury). Because appellant was able to and did make extensive use of the report, while the district court constrained the government to minimize the potential for unfairness, we find that the government's provision of the reports was consistent with *Brady.*[7]

## VI.

▉▉▉ Finally, appellant asserts that the district court abused its discretion in sentencing him. We accept appellant's assertion because we cannot uphold the restitution ordered by the district court. Under the aegis of Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. §§ 3663(e)(1) (1982), the district court imposed restitution of $10,000 on the first count and $4,000 on the second, to be paid to Coin Depot since it reimbursed the Federal Reserve. As the VWPA permits, the district did so without making specific factual findings concerning the amount of loss actually sustained by the victim and the appellant's financial needs and resources. This Circuit, however, has invoked its supervisory powers to require district courts to make specific factual findings as to these matters before imposing restitution. *See United States v. Palma,* 760 F.2d 475 (3d Cir.1985). Accordingly, we will vacate the judgment of sentence and remand the case to allow the district court to make appropriate factual findings as to the amount of loss sustained and the appellant's ability to make restitution and then to resentence appellant.[8]

---

6. The first fingerprint report, dated November 13, 1985, indicated no latent fingerprints were found on the August 13, 1985 money deposit tag and money straps. The second report, dated December 9, 1985, indicated four latent fingerprints on the tag and straps—none belonging to the defendant. The reports were arguably exculpatory in that they indicated no physical evidence of appellant's having touched the tag and straps existed.

7. The government has represented that its failure to turn over the reports previously was an

oversight. We accept this representation but do not condone the government's negligence. Rather we sternly admonish the government that it has a duty to be assiduous in its file maintenance so that evidence to which the defense is entitled is turned over in a prompt fashion.

8. Certainly in this record there is substantial evidence both that a $14,000 loss was sustained by Coin Depot or its insurer and that defendant was indigent at the time of sentencing, *see* App. at A–208–21. This evidence notwithstanding,

## VII.

The district court's judgment of conviction will be affirmed on both counts. The judgment of sentence will be vacated on both counts and the case will be remanded for further proceedings consistent with this opinion.

*Palma* requires the district court to make appropriate factual findings before entering or refusing to enter an order of restitution. *See United States v. Palma,* 760 F.2d at 480. No such findings were made here.

Appellant has also asserted that the sentence was so harsh as to be an abuse of discretion, given the appellant's lack of prior record, the urgent needs of his young family and his demonstrated devotion to those needs. It appears from the transcript of the sentencing hearing that the sentence was primarily motivated by appellant's refusal to accept responsibility for his deeds. We decline to disturb the sentence which was within the range of the court's discretion. This plaintive argument is best addressed to the district court which will have an opportunity to modify the sentence at the proceedings on remand if it so desires.