**UNITED STATES of America,**

v.

**Frank DeSUMMA.**

**No. CRIM. 98–562–02.**

United States District Court, E.D. Pennsylvania.

March 26, 1999.

---

David Fritchey, Asst. U.S. Atty., Philadelphia, PA, for Plaintiff.

Louis Busico, Newton, PA, for Defendant.

## ORDER AND MEMORANDUM

DuBOIS, District Judge.

### ORDER

**AND NOW**, to wit, this 26th day of March, 1999, upon consideration of defendant Frank DeSumma's Motion to Suppress Statements and All Physical Evidence (Document No. 64, filed January 29, 1999), and the related submissions of the parties, following a Hearing and Oral Argument on February 19, 1999, **IT IS ORDERED**, for the reasons set forth in the accompanying Memorandum, that defendant Frank DeSumma's Motion to Suppress Statements and All Physical Evidence is **GRANTED IN PART** and **DENIED IN PART**, as follows:

1.   That part of the Motion to Suppress which seeks to suppress the statement of Frank DeSumma with respect to the presence of a weapon is **GRANTED**;

2.   That part of the Motion to Suppress which seeks to suppress the weapon seized from the vehicle of defendant, Frank DeSumma, as a result of his statement is **DENIED**.

### MEMORANDUM

### I.   FACTS AND PROCEDURAL HISTORY [1]

On September 29, 1998, four Special Agents of the Federal Bureau of Investigation ("FBI") arrested defendant Frank DeSumma pursuant to a complaint and warrant.[2]   On October 28, 1998, a Federal grand jury returned a nine-count Indictment against DeSumma and two co-defendants, Peter C. D'Amelio and George Delia, for extortionate debt collection and weapons violations.   On November 5, 1998, defendants pled not guilty to all counts of the Indictment.[3]   On November 16, 1998, the Court denied defendant DeSumma's Motion for Pre-trial Release.

On January 29, 1999, DeSumma filed a Motion to Suppress Statements and All Physical Evidence;   the government responded on February 17, 1999.   On February 19, 1999, the Court held a hearing and oral argument on the motion.   The government called one witness, Special Agent S.J. Giarrizzo of the FBI. The following facts surrounding defendant's arrest were established.

On September 29, 1998, Special Agent Giarrizzo was part of a four-person team of FBI agents charged with executing an arrest warrant for the defendant.   Special Agent Giarrizzo stated that to his knowledge neither he nor the other members of the arrest team had any paperwork with them other than the arrest warrant.   The team of agents went to Club Ricochet, a "gentleman's club" on Oxford Valley Road in Lower Bucks County.   While an agent entered the club to find the defendant the rest of the team waited outside in the club's parking lot.

After the agent used a "ruse" to get the defendant out of the club and into the parking lot, at least two of the agents who waited in the parking lot identified themselves as federal officers.   Special Agent Giarrizzo told defendant that he was under arrest.   At this point, the defendant was "just a few paces, maybe ten or fifteen feet" from his car, and he was surrounded

---

**1.**   For a more thorough discussion of the procedural history of this case, see *United States v. D'Amelio*, No. 98–562–01, 1998 WL 800345 (E.D.Pa. Nov. 16, 1998).

**2.**   Also arrested on that date at different locations were DeSumma's co-defendants, Peter C. D'Amelio and George Delia.

**3.**   D'Amelio is charged in Counts 1, 2, 5, and 6. DeSumma is charged in Counts 1–8.   Delia is charged in Counts 1, 4, 5, and 9.

by the arrest team. N.T. at 48. Although the arrest was "instantaneous" with the defendant's emergence from the club, *id.* at 55, in a few seconds' time he reached his car, at which time he was stopped by Special Agent Giarrizzo. Defendant attempted to place his hands on the hood of his vehicle, but he was told that that was not necessary.[4] He was then handcuffed and subjected to a pat-down search by Special Agent Giarrizzo. As the agent was conducting the pat-down search, he asked the defendant whether he had any weapons. Defendant responded that he had a weapon inside of his car, indicated that his car was locked with a key-number lock system, and provided the key number to unlock the car. While searching the vehicle the agents found the gun. At no point in this sequence did the agents advise the defendant of his *Miranda* rights. Special Agent Giarrizzo stated that they searched the vehicle only because of defendant's response to his question about weapons. N.T. at 60.

In the suppression motion, defendant argues that his statement to Special Agent Giarrizzo that there was a weapon in his car was illegally obtained because he had not been advised of his rights as required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is defendant's position that the weapon seized from his vehicle was obtained as a direct result of this violation, and thus must be suppressed under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The government argues that this case fits within the "public safety exception" to *Miranda* established in *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). In the alternative, the government argues that the search of the car was valid under the "automobile exception" to the search warrant requirement

established in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).[5] The Court will address the admissibility of the statement and the weapon in turn.

## II. DISCUSSION

### A. The Statement

■ Where a defendant seeks to suppress a post-arrest statement, the government bears the burden of establishing by a preponderance of the evidence that the statement was not the product of custodial interrogation conducted in the absence of *Miranda* warnings. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). In the absence of *Miranda* warnings, the government has the burden of establishing that the interrogation fits within a recognized exception to the *Miranda* rule. *See id.*

#### 1. *Miranda*

■ In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court examined a defendant's Fifth Amendment right to be free from compelled self-incrimination in the context of custodial interrogation; the Court has repeatedly held that certain procedural safeguards were necessary to "dissipate the compulsion inherent in custodial interrogation and, in so doing, guard against abridgement of [a] suspect's Fifth Amendment rights." *Moran v. Burbine,* 475 U.S. 412, 425, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *see Miranda,* 384 U.S. at 468, 86 S.Ct. 1602. These safeguards include certain rights that an accused must be informed of, and must waive, before interrogation can commence:

> He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used

---

4. Special Agent Giarrizzo stated that he was uncertain whether DeSumma ever touched his car. N.T. at 56.

5. The government also submits that the vehicle search was permissible as a search incident to arrest. Because the Court holds that the gun should not suppressed, the Court need not address this argument.

against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation.

*Miranda,* 384 U.S. at 479, 86 S.Ct. 1602. Only if there is a knowing, voluntary, and intelligent waiver of the rights expressed in the warnings can police question a suspect without counsel being present and introduce at trial any statements made during the interrogation. *See id.*

### 2. Public Safety Exception to *Miranda*

In *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), the Court fashioned an important exception to the *Miranda* requirements. In that case, a young woman told two police officers that she had just been raped, that her assailant had just entered a nearby store, and that he was carrying a gun. Upon entering the store the officers quickly spotted the defendant. After a short chase, the defendant was caught and searched. Because he was wearing an empty shoulder holster, and mindful of the victim's warning, the arresting officer asked him where the gun was located before reading him the *Miranda* warnings. *See id.* at 651–52, 104 S.Ct. 2626. The defendant nodded in the direction of some empty cartons and stated, "the gun is over there." In concluding that the statement and the gun should not be suppressed, the Court held that "concern for public safety must be paramount to adherence to the literal language of the prophylactic rules enunciated in *Miranda.*" *Quarles,* 467 U.S. at 653, 104 S.Ct. 2626.

■ The public safety exception applies only where there is "an objectively reasonable need to protect the police or the public from any immediate danger associated with [a] weapon." *Id.* at 659 n. 8, 104 S.Ct. 2626. Thus, absent circumstances suggesting such danger, the need for the exception is not apparent, and the suspicion that the questioner is on a fishing expedition outweighs the belief that public safety motivated the pre-*Miranda* questioning.

What is objectively reasonable, of course, depends upon the circumstances of the arrest. In *United States v. Mobley,* 40 F.3d 688 (4th Cir.1994), the arresting officers asked the defendant whether he had a weapon when he was naked, handcuffed, and removed from his house before questioning. In refusing to apply the public safety exception, the Fourth Circuit stressed the "exceptive nature" of the *Quarles* rule, stating that as such it must be construed narrowly. *Mobley,* 40 F.3d at 693. There was nothing that separated the arrest from "an ordinary and routine arrest scenario"; thus the court in *Mobley* held that it was bound to follow *Miranda,* not its exception. *Id.*

The government cites cases which support the proposition that the test for applying the public safety exception is objective reasonableness. In *United States v. DeSantis,* 870 F.2d 536 (9th Cir.1989), the Ninth Circuit held that whether the arresting officers believed the defendant might have had a weapon is not dispositive. Rather, other circumstances in *DeSantis* suggested danger: (1) before the arresting officers asked the defendant whether he had a weapon, the defendant was not secured in handcuffs, and (2) the defendant asked if could go to another room in the house so that he could change clothes before being taken to court. In *United States v. Brady,* 819 F.2d 884 (9th Cir. 1987), the arresting officer had reason to be concerned because he was confronted with a potential kidnap victim and saw an individual carrying a knife near the scene. Thus, under the circumstances, it was objectively reasonable to believe that the officer might be in danger.

■ The facts in the instant case are quite different. As noted, defendant was

alone when arrested, with agents surrounding him. There is no evidence that the agents knew he was carrying a weapon, or had access to one. Nor is there any evidence that the arresting agents were aware of the defendant's previous use of a firearm in this case.[6]

The Court finds that this was "an ordinary and routine arrest scenario," and thus concludes that the arresting agents had an insufficient factual basis from which they might reasonably conclude that the defendant presented a danger to themselves or the public.[7] *Mobley*, 40 F.3d at 693. The arresting agents should have given defendant *Miranda* warnings. They did not, and the statement must be suppressed.

## B. The Gun

The Court must next determine whether the gun found in defendant's car must be suppressed because of the *Miranda* violation. The standard for suppression of physical evidence derived from *Miranda* violations has not been settled definitively by the Supreme Court or the Third Circuit.

### 1. *Elstad*

In *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Supreme Court refused to suppress a confession validly obtained after proper *Miranda* warnings purely because it came after a prior confession elicited during an unwarned, custodial interrogation. The Supreme Court recognized that the "fruit of the poisonous tree" doctrine enunciated in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) forbids the use of evidence obtained as a result of a constitutional violation, but held that because *Miranda* is a prophylactic rule, a *Miranda* violation does not necessarily preclude the use of all evidence flowing therefrom. *Elstad*, 470 U.S. at 306–09, 105 S.Ct. 1285.

■ Derivative evidence is suppressed only where the Fifth Amendment itself is violated, which, according to the *Elstad* Court, occurs where the statement itself is not voluntary. A showing of actual coercion in obtaining the statement will meet this standard. *Id.* at 305, 105 S.Ct. 1285. *See also United States v. Johnson*, 816 F.2d 918, 922–23 (3d Cir.1987)(stating that absent constitutionally impermissible coercion in eliciting an initial confession, adequate Miranda warnings before a subsequent voluntary confession validates that confession).

Although neither the Supreme Court nor this Circuit has extended *Elstad* to apply to physical evidence seized as a consequence of a *Miranda* violation, the Third Circuit has noted that in *Elstad*, the Su-

---

**6.** The government states that the agents knew that the defendant was armed because the arrest warrant detailed both his criminal history and a recent shooting incident. However, no such evidence was presented at the suppression hearing. Special Agent Giarizzo, the government's sole witness, made no reference to the contents of the arrest warrant, the supporting affidavit, or the defendant's admission that he was a convicted felon. Unverified representations of counsel in legal memoranda are not evidence and thus are accorded no weight in the Court's findings of fact. *See Cisternas–Estay v. I.N.S.*, 531 F.2d 155, 157 n. 1 (3d Cir.1976)("[U]ncontroverted statements of counsel should not be considered part of the record."); *Prince v. Sun Shipbuilding & Dry Dock Corp.*, 86 F.R.D. 106, 107 (E.D.Pa.1980)(representations of counsel in a brief are not part of the record). Thus, the Court will not infer that the arresting officers knew the information contained in the affidavit.

**7.** The government argues that because the arrest warrant was, in part, for firearms violations, the arrest team had reason to be concerned for the presence of weapons. However, assuming *arguendo*, the arresting agents were aware of the contents of the arrest warrant, applying the exception solely because the defendant was wanted for a weapons violation would be tantamount to establishing a per se rule that the public safety exception applies to every firearms arrest. The Court is unwilling to create such a rule in light of the narrow construction which must be given to the *Quarles* exception. *See Mobley*, 40 F.3d at 693.

preme Court specifically rejected the proposition that the "fruit of the poisonous tree" doctrine extends to violations of *Miranda. Johnson*, 816 F.2d at 922–23. In addition, every circuit that has considered the issue has construed *Elstad* to apply equally to all forms of derivative evidence. *See, e.g., United States v. Elie*, 111 F.3d 1135, 1142 (4th Cir.1997)("derivative evidence obtained as a result of an unwarned statement that was voluntary under the Fifth Amendment is never 'fruit of the poisonous tree.'") (citations omitted); *United States v. Mendez*, 27 F.3d 126, 130 (5th Cir.1994)("[t]he derivative evidence rule operates only when an actual constitutional violation occurs, as where a suspect confesses in response to coercion."); *United States v. Sangineto–Miranda*, 859 F.2d 1501, 1515 (6th Cir.1988)("where police simply fail to administer *Miranda* warnings, the admissibility of nontestimonial physical evidence derived from the uncounseled statements should turn on whether the statements were voluntary within the meaning of the Fifth Amendment"); *United States v. Gonzalez–Sandoval*, 894 F.2d 1043, 1048 (9th Cir.1990)(finding that "tainted fruits" doctrine does not apply to physical evidence obtained through *Miranda* violation); *see also United States v. Coley*, 974 F.Supp. 41 (D.D.C.1997)(finding that absent proof of unconstitutional conduct, there is no requirement that fruit of *Miranda* violation be excluded); Wayne R. LaF'ave & Jerald H. Israel, Criminal Procedure § 9.5(b), at 201 (Supp.1991)(noting that *Elstad* only rejected application of the fruits doctrine as applied to a subsequent confession," but that "there is much in the Court's opinion that suggests that the fruits doctrine should also be inapplicable to physical evidence acquired through a *Miranda*-violative confession"). *But see United States v. Byram*, 145 F.3d 405, 409 (1st Cir.1998) (applying fruits doctrine to second statement where *Miranda* violation is not merely technical, there is a "substantial nexus" between the violation and the original statement, and second statement not preceded by *Miranda* warnings).

■ The Fourth, Fifth, Sixth, and Ninth Circuits have held that the physical evidence seized as a result of a *Miranda* violation is to be suppressed only upon a showing that the original statement was not voluntary. This Court concurs, and concludes that physical evidence obtained because of a voluntary statement obtained in violation of *Miranda* need not be suppressed because of the *Miranda* violation. If a statement that reveals the existence or location of physical evidence is voluntary and not itself the product of a constitutional violation, the physical evidence will be admissible unless excluded for some other reason.

## 2. Voluntariness of the Statement

■ In the context of the Fifth Amendment, "coercive police activity is a necessary predicate to the finding that a [statement] is not 'voluntary'...." *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); Defendant in this case revealed the existence and location of the gun with a single statement made in response to a single question. He volunteered the key number for the agents to unlock the car and retrieve the gun. At that time he had been in custody only for a few minutes, at most. The record contains no evidence of coercive police activity or compulsion of any kind. Thus, the Court concludes that defendant's statement was voluntary, and the gun will not be suppressed as tainted fruit.

## 3. The Automobile Exception

Having determined that the gun should not be suppressed as a fruit of the poisonous tree, the Court must determine whether the search of the car was valid. The Fourth Amendment protects against unreasonable searches. U.S. Const. amend. IV. A search is reasonable when supported by probable cause. *United States v. Verdugo–Urquidez*, 494 U.S. 259, 297–98, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990). Prob-

able cause exists when, at the moment of the search, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that an area contains evidence of a crime. *See Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)(discussing probable cause in context of arrest).

Although defendant's admission that there was a weapon in his vehicle will be suppressed because of the *Miranda* violation, it provided probable cause for the search of the car, where the weapon was subsequently found. Because the agents had probable cause to search the vehicle, there was no need for a warrant. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Karnes v. Skrutski,* 62 F.3d 485, 498 (3d Cir.1995)(noting that "the automobile exception to the warrant requirement allows warrantless searches of any part of a vehicle that may conceal evidence where there is probable cause to believe that the vehicle contains evidence of a crime.")(internal citations omitted). Thus, the search was valid, and the gun may be offered in evidence in the government's case-in-chief.

### III. *CONCLUSION*

For the foregoing reasons, the Court will grant defendant's Motion to Suppress to the extent that it seeks to exclude his response to Special Agent Giarrizzo's pre-*Miranda* questions, and deny the motion with respect to the weapon.