

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-11-2001

# USA v. DeSumma

Precedential or Non-Precedential:

Docket 00-3629

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"USA v. DeSumma" (2001). *2001 Decisions*. Paper 288.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/288

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 29, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3629

UNITED STATES OF AMERICA

v.

FRANK DeSUMMA, a/k/a Doc,
         Frank DeSumma, Appellant

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 98-CR-00562-2)
District Judge: Honorable Jan E. DuBois

Argued July 30, 2001

Before: BECKER, McKEE and WEIS,
Circuit Judges

(Filed: November 29, 2001)

        Marian R. Ragusa, Esquire
          (ARGUED)
        Louis R. Busico, Esquire
        234 South State Street
        Newtown, PA 18940

        Counsel for Appellant

Michael L. Levy, Esquire
United States Attorney
Robert A. Zauzmer, Esquire
Assistant United States Attorney
Chief of Appeals
Robert E. Courtney, III, Esquire
Deputy U.S. Attorney and
Chief, Organized Crime Division

David Fritchey, Esquire (ARGUED)
Assistant United States Attorney
Organized Crime Division
615 Chetnut Street, Suite 1240
Philadelphia, PA 19106

Counsel for Appellee

OPINION OF THE COURT

WEIS, Circuit Judge.

DeSumma, the defendant in this criminal case, asserts that the pistol seized from him as a consequence of his non-Mirandized statement was "fruit of the poisonous tree" and, therefore, should have been excluded from evidence. We reject that contention because suppressing evidence derived from a voluntary but unwarned confession serves neither the goal of deterring coercive police misconduct nor the purpose of ensuring trustworthy evidence. Accordingly, the conviction will be affirmed.

A jury convicted defendant on one count of conspiracy, four counts of extortion in the collection of extension of credit in violation of 18 U.S.C. S 894(a), and use of a firearm during the commission of a crime in violation of 18 U.S.C. S 924(c). He was also found guilty of being a felon in possession of a firearm in violation of 18 U.S.C.S 922(g). The District Court sentenced defendant to fifty-one months imprisonment on the extortion counts, and imposed a mandatory consecutive sixty months on the gun possession charge.

Defendant acted as a collector for one Peter D'Amelio, intimidating individuals who had defaulted on loans or

submitted bad checks. In January 1998, D'Amelio and defendant appeared at the offices of brothers Andy and Gary Shull in Huntingdon Valley, Pennsylvania, to confront them with the fact that $40,000 in checks that they had written had proved to be worthless. After some heated discussion, defendant drew a handgun and fired a shot past Andy Shull's head and into the wall behind him.

The Shulls then agreed to work with the FBI in their investigation of D'Amelio and defendant. Six months later, defendant met with the Shulls at a restaurant in Philadelphia, Pennsylvania. After searching the Shulls for recording devices, defendant warned them not to cooperate with the authorities against D'Amelio or himself. He also reminded the Shulls of the January 1998 shooting incident, and threatened them with harm if they turned on him.

Over the next two months, defendant met with the Shulls on several occasions and renewed his threats to kill them if they did not pay the money they owed D'Amelio. The FBI then secured arrest warrants for D'Amelio and defendant.

On September 29, 1998, a five-man FBI surveillance team observed defendant drive his automobile into the parking lot of a club in Bucks County, Pennsylvania, and park near the door. One agent entered the club and announced that there had been an accident in the parking lot involving the defendant's car. Defendant then went out to the lot, and when he was within a few feet of his car, the FBI team surrounded and arrested him.

One of the agents handcuffed defendant and conducted a pat-down search to determine if he carried any weapons. Failing to detect anything, an agent asked defendant if he had any weapons or firearms in his possession. Defendant replied that there was a weapon in his automobile and gave the agent the pad combination to open his car door.

Until this point, the agents had not displayed any firearms, used any force or threats, nor had they given any Miranda warnings. The agents opened the car and retrieved a loaded pistol from a briefcase.

The District Court conducted a suppression hearing, during which the government presented the testimony of

3

one of the FBI agents who had been at the scene. The government offered no evidence that the agents knew defendant was carrying a weapon or had access to one. Nor did the prosecution present any testimony that the agents were aware of the defendant's previous use of a firearm.

Based on this evidence, the Court found that because Miranda warnings had not been given, the defendant's statement that a gun was in his car should be suppressed. Rejecting the government's contention that the public safety concerns expressed in New York v. Quarles, 467 U.S. 649 (1984), were applicable, the trial judge said this was a "routine arrest scenario."

The Court, however, ruled that the pistol itself was admissible and the fruit of the poisonous tree doctrine did not apply because the defendant's statement was voluntary, albeit inadmissible, under Miranda. Relying on Oregon v. Elstad, 470 U.S. 298 (1985), the Court observed that a Miranda breach does not necessarily preclude the use of all evidence flowing from the infraction. Moreover, this Court had observed that Elstad rejected the proposition that the fruit of the poisonous tree doctrine, announced in Wong Sun v. United States, 371 U.S. 471 (1963), applied to Miranda violations. United States v. Johnson , 816 F.2d 918, 922–23 (3d Cir. 1987). Finally, the District Court concluded that the defendant's voluntary statements provided probable cause to search his car. See United States v. DeSumma, 44 F. Supp. 2d 700 (E.D. Pa. 1999).

During the sentencing proceeding, D'Amelio testified that just before the start of trial, defendant threatened him with death if he testified for the prosecution. Based on this testimony, the District Court found that defendant had obstructed justice and, therefore, added a two-point increase to the offense level.

On appeal, defendant contends that the District Court erred by admitting the pistol into evidence. He also argues that the Court violated Apprendi v. New Jersey , 530 U.S. 466 (2000), by adding a two-point upward adjustment to the offense level for obstructing justice in the absence of a jury determination on that point.

4

I.

In Wong Sun, narcotics agents arrested the defendants in their homes without probable cause or reasonable grounds. Wong Sun, 371 U.S. at 473-78. The Supreme Court held that because Fourth Amendment violations had occurred, the evidence stemming from those arrests must be excluded from the trial as "fruit of the poisonous tree." Id. at 488.

The defendant in Elstad gave an incriminating statement before receiving Miranda warnings. Elstad, 470 U.S. at 300-01. Later, after having been advised of his Miranda rights, defendant gave a written statement that was introduced at trial. Id. at 301-02. The Supreme Court rejected the defendant's contention that the second confession was the fruit of the poisonous tree. Id. at 308. The Court explained that the purpose of the Fourth Amendment's exclusionary rule is "to deter unreasonable searches, no matter how probative their fruits." Id. at 306 (emphasis added). The Miranda exclusionary rule, in contrast, serves the Fifth Amendment and applies more broadly than the Amendment itself. Id. Thus, a voluntary statement that would be admissible under the Amendment may be barred because of the lack of a Miranda warning.

The Court explained that the Fifth Amendment bars the prosecution from using compelled testimony in its case in chief because the failure to administer Miranda warnings creates a presumption of compulsion. Elstad, 470 U.S. at 306-07. Consequently, even unwarned voluntary statements are excluded from evidence. Id. at 307. The Court continued, however, "the Miranda presumption . . . does not require that the statements and their fruits be discarded as inherently tainted." Id. at 307. A defendant whose confession is inadmissible may not "enjoy the freedom to `deny every fact disclosed or discovered as a "fruit" of his confession' . . . ." Id .; see also Harris v. New York, 401 U.S. 222, 225 n.2 (1971) (rejecting defendant's request to suppress such evidence as an "extravagant extension of the Constitution").

Elstad emphasized that "[v]oluntary statements remain a proper element in law enforcement" and admissions of guilt, "if not coerced, are inherently desirable." Elstad, 470

U.S. at 305 (internal quotations and citations omitted). The element of police misconduct is not a factor that comes into play when the prosecution uses a voluntary statement.

Applying the Wong Sun fruits doctrine where the evidence is obtained as the result of a voluntary statement, would be inconsistent with deterring improper police conduct and the goal of assuring trustworthy evidence. Id. at 308. No constitutional violation occurs in such a situation unlike the circumstances where an unreasonable search occurs or a coerced confession is obtained.

Johnson relied on Elstad in holding that "[w]here a subsequent confession is obtained constitutionally, the admission of prior inadmissible confessions was harmless error." Johnson, 816 F.2d at 923. We summarized Elstad as "specifically reject[ing] the proposition that the `fruit of the poisonous tree' doctrine, which in the fourth amendment context requires the exclusion of evidence or confessions obtained as a result of a constitutional violation, extends to violations of the Miranda decision." Id. at 922.

Other cases are in accord. See United States v. Elie, 111 F.3d 1135 (4th Cir. 1997) (derivative evidence obtained as a result of a voluntary unwarned statement not fruit of the poisonous tree); United States v. Mendez, 27 F.3d 126 (5th Cir. 1994) (derivative evidence admissible); United States v. Gonzalez–Sandoval, 894 F.2d 1043 (9th Cir. 1990) (same); United States v. Sangineto–Miranda, 859 F.2d 1501 (6th Cir. 1988) (same). But see United States v. Byram, 145 F.3d 405, 410 (1st Cir. 1998) (applying the fruits doctrine `where there is a substantial nexus between [Miranda ] violation in the second statement, where the second statement is not itself preceded by an adequate Miranda warning').

After the District Court entered its judgment in the case before us, the Supreme Court held in Dickerson v. United States, 530 U.S. 428 (2000), that Miranda was a constitutional rule that Congress could not supersede legislatively. 530 U.S. at 444. Defendant seizes on Dickerson's ruling, arguing that the pronouncement of Miranda's constitutionality casts doubt on the earlier cases denying suppression of derivative evidence. He emphasizes that the opinions refusing to apply Wong Sun referred to

6

the fact that Miranda was only "prophylactic" and not constitutional.

We cannot agree with the defendant's reading of Dickerson because the Supreme Court appeared to anticipate and reject it. The Court explained that "[o]ur decision in [Elstad] -- refusing to apply the traditional `fruits' doctrine developed in Fourth Amendment cases -- does not prove that Miranda is a nonconstitutional decision, but simply recognizes the fact that unreasonable searches under the Fourth Amendment are different from unwarned interrogation under the Fifth Amendment." 530 U. S. at 441.

Dickerson thus continued to observe the distinction between Miranda's application to cases involving the Fifth, rather than the Fourth, Amendment. Ultimately, the Fifth Amendment prevents the use of the non-Mirandized statement rather than the introduction of derivative evidence.

We hold that the fruit of the poisonous tree doctrine does not apply to derivative evidence secured as a result of a voluntary statement obtained before Miranda warnings are issued. Thus, even though the defendant's seized gun was secured as a result of his non-Mirandized statement, it was properly admitted.

Our holding makes it unnecessary to decide whether the evidence was admissible under Quarles. In that case, the defendant was wearing an empty holster when he was apprehended, prompting the officer to ask him where the gun was. 467 U.S. at 652. Defendant nodded in the direction of some empty cartons and said, "the gun is over there." Id. The Supreme Court held that both the statement and the gun were admissible because Miranda does not apply where the public's safety is threatened. Id. at 656-59; see also id. at 667-74 (O'Connor, J). (discussing admission of the gun itself).

In the case before us, the government did not introduce any evidence that the FBI knew of the defendant's violent propensities or that he had used a pistol to intimidate the Shulls. Nor did the government introduce evidence at the suppression hearing that the agents were aware of the

7

crime for which defendant was being arrested. So far as the record here reflects, the arresting agents were not advised that the defendant was any more dangerous or violent than a person accused of a typical Ponzi scheme. The government furnished no evidence that there was any basis for fear of the public's safety or the officers' well-being.

II.

In sentencing the defendant, the District Court imposed a two level increase pursuant to United States Sentencing Guideline 3C1.1, which provides for such enhancement if the defendant willfully obstructs the administration of justice during the course of an investigation, prosecution or sentencing. In addition to threatening D'Amelio, the testimony at trial reveals that the defendant similarly attempted to intimidate the Shulls and performed body searches on them.

Defendant contends that the obstruction issue should have been submitted to the jury in accordance with Apprendi. There, the Supreme Court held that"any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. This Court has since concluded, however, that when the actual sentence imposed does not exceed the statutory maximum, Apprendi is not implicated. United States v. Williams, 235 F.3d 858, 863 (3d Cir. 2000). In addition, Williams stated that Apprendi did not purport to limit the factors that a sentencing judge could consider in imposing a sentence below the statutory maximum. Id.; see also United States v. Pressler, 256 F.3d 144, 159 (3d Cir. 2001) (Apprendi claim nonexistent where ultimate sentence is less than that which would have been authorized by jury verdict). Here, the sentence fell well below the statutory limit and, accordingly, was permissible.

The defendant's contention that he was entitled to have the obstruction of justice issue submitted to a jury must fail because he was not convicted of that crime. Although his conduct resembled this offense, it was simply relevant conduct that had a bearing on the appropriate sentence. In

8

this respect, the District Court properly exercised its discretion in accordance with the Sentencing Guidelines.

Accordingly, the judgment of the District Court will be affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

9