**UNITED STATES of America**

v.

**Andre MASSENBERG, Appellant**

No. 01–3594.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) April 25, 2002.

Filed May 9, 2002.

Before BECKER, Chief Judge, SCIRICA and RENDELL, Circuit Judges.

OPINION

BECKER, Chief Judge.

Defendant Andre Massenberg appeals from the judgment entered on the verdict of a jury adjudging him guilty of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. 922(g). The trial followed an evidentiary

hearing on Massenberg's motion to suppress physical evidence and his statement to the arresting officers that there was a shotgun under the bed in the room where he was arrested. The District Court denied Massenberg's suppression motion, and, after trial, filed findings of fact and conclusions of law in support of this ruling, including the important finding that the shotgun was in fact under the bed and not between the mattress and the box spring.

Most of the facts are not in dispute. Indeed, Massenberg in his brief adopts "the following undisputed findings of fact ably set forth by the suppression court:"

Prior to arriving [at the Defendant's home], [the police were] informed that the [d]efendant that they sought to apprehend had been involved in a home invasion robbery involving guns and three other [d]efendants, that he had a prosthesis for a missing left leg, that he may have a .22 caliber handgun hidden in that leg, that two of the other perpetrators of the home invasion robbery had been arrested. One other was still at large, and the defendant was likely to be armed and dangerous.

When the officers arrived at the home, they secured the front, side and rear of the property. Officer Prosser watched from the windows at the front of the home, from across the street, also the doors and roof. McClendon, Clark and Fellows then went to the front of the door and did the knocking and announced, loud knocks and loud voices. Prosser observed movement of the blinds at the second floor bedroom window to his left, indicating that somebody heard the police knocking and announcements. Nobody arrived at the door and at that point the officers at the door broke open the door and entered the property along with Officer Prosser. McClendon, Prosser and Fellows imme-

diately ran upstairs to the bedroom while others secured other areas of the house on the first floor and in the basement.

McClendon went to the middle bedroom and Fellows and Prosser went to the front bedroom and yelled police, and entered the bedroom. Fellows at this point had his gun out. Prosser pulled off the bed sheets off the folks on the bed and found the Defendant, who was naked, a female who was in pajamas or some type of clothing and a child who was clothed.

The Defendant was then recognized as the person who was the subject of the arrest warrant. He was arrested and cuffed by the officers face down on the bed. Prosser observed that the Defendant had jeans and a boot on the floor at the foot of the bed extending underneath the bed and that the Defendant's prosthesis was not on his leg. He then grabbed the jeans and boot which were heavy and, as I've indicated, the boot and the artificial leg were inside the jeans. Sergeant Fellows asked several times whether there were any guns in the house, where is the .22.

At that point, Prosser was about to cut the jeans in order to inspect the prosthesis at which point the Defendant yelled, there is a shotgun under the bed. Prosser did not then cut the jeans and instead went under the bed and pulled out the shotgun . . . .

Br. of Appellant at 7–8 (quoting Trial Court Findings of Fact and Conclusions of Law, N.T., 4/4/01, at 9–10).

Massenberg's able counsel argues with great logical and rhetorical force, urging us to hold that:

the gunpoint interrogation of an unarmed, one-legged, naked suspect who is handcuffed behind his back in a residential bedroom with only a woman and

children present in the small residence constitutes an illegal interrogation.

He reasons that his client:

> at first, refused to answer the questions concerning the whereabouts of the weapon. Then during the interrogation, the police threatened to cut open his prosthesis and/or take it from him for x-rays at the Philadelphia Airport in an effort to compel him to answer questions about the presence of any weapons. The police never informed the defendant of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny, prior to, or during the custodial interrogation. Such interrogation violates *Miranda, Dickerson v. United States,* 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000), and the Fifth Amendment of the United States Constitution. Further, no cognizable exception to Miranda and Dickerson is applicable. Specifically, the "narrow" "public safety exception" created in *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) is neither warranted factually in this case nor has it been extended by this Circuit or the Supreme Court of the United States to private residences rather than public settings.

Thus, he submits, the statement as to the whereabouts of the gun must be suppressed.

Massenberg further argues that the shotgun, seized without a warrant, must be suppressed. First, he submits, the shotgun was located and seized as the direct result of the illegal custodial interrogation, and hence must be suppressed as fruit of the illegal custodial interrogation. Second, he contends that the shotgun was not within his "immediate control" at the time of its discovery and seizure since he was already naked, face down on the bed, handcuffed behind his back to restrict

movement, one-legged, and out-numbered by armed police officers. Therefore, he asserts, the warrantless seizure of the shotgun does not fall within the search-incident-to-lawful-arrest exception to the warrant requirement.

Important to this latter contention is Massenberg's argument that the District Court made a clearly erroneous finding of fact by concluding the shotgun was seized from under the bed rather than between the mattress and box spring (where Massenberg now contends it was located). He submits that the supervising officer executing this warrant testified unequivocally in the Philadelphia Court of Common Pleas at a suppression hearing on the underlying case that the shotgun was located between the mattress and box spring, not under the bed, and that in District Court, the officer, when confronted with this prior testimony, was uncertain whether the shotgun was between the mattress and box spring or under the bed. Massenberg submits that if the gun was between the mattress and box spring, the shotgun must be suppressed because its discovery falls outside the permissible scope of a search incident to a lawful arrest, as well as outside the proper scope of a protective sweep of the premises.

The Government devotes much of its brief to *New York v. Quarles,* 467 U.S. 649, 655–56, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), noting that in *Quarles* the Court held that:

> if a threat to the police or public safety necessitates immediate questioning of a suspect, the suspect's statements are admissible, despite a failure to secure the suspect's waiver of his *Miranda* rights. The *Quarles* exception covers questioning related 'to an objectively reasonable need to protect the police of the public from any immediate

danger ....' *Id.* at 659 n. 8, 104 S.Ct. 2626 (emphasis supplied).

The Government further submits that:

[C]ourts have repeatedly applied Quarles to uphold the admission of statements by arrestees respecting whether they are armed or there are weapons present.

The Government submits that:

In the circumstances here, the police were not obliged to give Massenberg Miranda warnings before determining from him whether and where any weapons were in the bedroom. The officers knew that Massenberg was wanted for armed robbery; he was said to keep a handgun in his prosthesis; two of his three co-defendants had been arrested in a house where the police seized two pistols, ammunition, a bulletproof vest, and narcotics; a third co-defendant was at large; the police had seen movement in the room where they later found Massenberg; and Massenberg had not responded to the officers' knocking so that they had to break his door down to execute the arrest warrant.

Thus, all of the robbers had to be presumed to be armed and dangerous; one robber, in addition to Massenberg, was at large; and Massenberg and this other robber knew that the police were looking for them, as the first two suspects had been arrested about a week earlier. Massenberg had not responded to police knocking, giving him time to secrete weapons or the remaining robber. Finally, Massenberg's arranging himself in bed with a woman and child, pretending to sleep after the police had broken his door and shouted throughout the house, showed that he had prepared himself for their arrival and might have planned some scheme by himself or with others to harm or attempt to elude them.

■ Although the Government states that "[t]he police would have acted irresponsibly had they not asked whether and where there were weapons in his bedroom," Massenberg responds, as suggested above, that the "Quarles exception" should not apply under these facts where Massenberg was handcuffed on the bed in his house. While the parties ably brief this issue with point and counterpoint, we need not resolve it to decide this case. That is because the case can be decided on narrower grounds. In short, we believe the search must be upheld as a search incident to a lawful arrest.

Important to our conclusion is our acceptance of the District Court's factual finding that the shotgun was located underneath the bed and not in between the mattress and the box spring, as Massenberg claims. As noted above, there was conflicting testimony as to the shotgun's location, but the District Court concluded that "the great weight of the evidence is that the gun was under the bed." Factual findings made by the District Court in the course of ruling on a suppression motion are reviewed for clear error. *See United States v. Roberson,* 90 F.3d 75, 77 (3d Cir.1996). An error is clear only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). In light of the evidence supporting the District Court's conclusion namely, the testimony of both Sergeant Fellows and Officer Prosser we cannot conclude that the District Court's finding was clearly erroneous, and therefore analyze this case from the premise that the seized shotgun was located under the Defendant's bed.

As described above, the police arrested Massenberg as he lay face down on the bed. It is of course well-settled that a

search incident to a lawful arrest is valid and does not require a separate warrant. *See Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The scope of such a search includes the area "within [the arrestee's] immediate control[,] ... mean[ing] the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763, 89 S.Ct. 2034. Because the floor under the bed was within the reach of Massenberg when he was arrested, it was permissible for the police to search for a weapon in that area during the course of the arrest.

Massenberg protests that because he was handcuffed behind his back prior to the police conducting the search under the bed, the shotgun was not within his "immediate control," and was therefore outside the proper scope of the search incident to his lawful arrest. We recognize that there is some logical force to Massenberg's argument in that it would appear that at the time of the search he was not in a position to either reach for a weapon or destroy any evidence. However, this Court's opinions, as well as those from many other courts of appeals, have recognized that even when an arrestee is handcuffed, a search of the area that was within the defendant's immediate control when he was arrested is valid so long as it is conducted within a time span close to the arrest and while the defendant is still within the general proximity of the arresting officers. *See Government of Virgin Islands v. Rasool*, 657 F.2d 582, 585, 588–89 (3d Cir.1981) (upholding search of automobile incident to driver's arrest after driver had been handcuffed but remained in the vicinity of the arresting officer); *see also United States v. Turner*, 926 F.2d 883, 887–88 (9th Cir.1991) (upholding search of area of room in defendant's immediate control before his arrest, although defendant had been handcuffed and removed from room); *United States v. Abdul–Saboor*, 85 F.3d 664, 670–71 (D.C.Cir.1996) (search upheld although defendant had been handcuffed and was outside bedroom in which he was arrested).

Moreover, because the area under the bed provided a potential hiding place from which an attack on the officers could have been launched by an associate of Massenberg, the police were justified in searching it to ensure their safety. *See Maryland v. Buie*, 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) ("hold[ing] that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched"). Indeed, for this reason, Massenberg "concedes that the shotgun is admissible ... if the court finds that the shotgun was underneath the bed...." Therefore, we hold that the District Court did not err in admitting the shotgun into evidence for it was seized as part of a valid search incident to Massenberg's arrest.

Massenberg appeals not only the admission into evidence of the shotgun, but also the admission of his statement informing the officers of the shotgun's location. Because this statement was made before Massenberg received the required *Miranda* warnings, its admissibility can only be upheld if it were to fall within the Quarles exception. In other words, unlike the shotgun itself, Massenberg's statement as to the shotgun's whereabouts cannot be deemed admissible on a narrower ground like search incident to lawful arrest.

■ We decline to address whether Massenberg's statement as to the shotgun's location falls within the Quarles exception, for even if the statement was admitted in violation of *Miranda*, we believe

that in light of the admission of the shotgun, any error in admitting the Defendant's statement was harmless. See Fed. R.Crim.P. 52(a). Although the officers did not discover the shotgun until after the Defendant told them it was under the bed, we are confident that had the Defendant never made such a statement, the officers likely would have looked under the bed anyway to ensure their safety as they made the arrest. *See Nix v. Williams*, 467 U.S. 431, 448, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) ("When ... the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint, and the evidence is admissible."). Furthermore, so long as Massenberg's statement was voluntary, and we believe that it was, the shotgun would still be admissible, for this Court has made clear that the fruit-of-the-poisonous-tree doctrine does not apply to derivative evidence obtained as a result of a non-Mirandized statement. *United States v. DeSumma*, 272 F.3d 176, 180–81 (3d Cir.2001). Accordingly, any error in the admission of the statement was harmless.

The judgment of the District Court will be affirmed.