PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2003
_____

UNITED STATES OF AMERICA,
                                        Appellant

v.

GARY BRADLEY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-18-cr-00230-001)
District Judge:  Hon. John E. Jones, III
_____

Argued on
April 14, 2020

Before:   AMBRO, JORDAN, and SHWARTZ, *Circuit
Judges.*

(Filed: May 15, 2020)
_____

Scott R. Ford   [ARGUED]
Office of United States Attorney
Middle District of Pennsylvania
228 Walnut Street
P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA  17108
        *Counsel for Appellants*

Ronald A. Krauss   [ARGUED]
Frederick W. Ulrich
Office of Federal Public Defender
100 Chestnut Street – Ste. 306
Harrisburg, PA  17101
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Early on a cold February morning in 2018, Pennsylvania State Trooper Wesley Johnson pulled over Gary Bradley for speeding. With a skillful and friendly demeanor, the trooper coaxed Bradley into confessing that there was cocaine in the vehicle he was driving. After being indicted for possession with intent to distribute cocaine, Bradley moved to suppress both his confession and the physical evidence, including the drugs. The District Court granted that motion.

The government now appeals the suppression of the physical evidence, presenting two arguments, only one of

2

which was made to the District Court. The government has forfeited the argument it did not make earlier – namely, that the physical evidence should not have been suppressed because the statements Bradley made before receiving *Miranda* warnings were made voluntarily. But the government's second argument, that the cocaine would inevitably have been discovered because Bradley's vehicle would have been subject to an inventory search, has merit. We will, therefore, vacate the District Court's order to the extent it suppressed the physical evidence and remand for it to decide whether any supplementation of the record is needed to decide whether that physical evidence would have been inevitably discovered, and, if so, whether police department policy sufficiently cabined the scope of the officer's discretion in conducting the inventory search such that the search of the backpack, a closed container, would have been lawful.

## I.    BACKGROUND

### A.    The Traffic Stop

Trooper Johnson was sitting in his unmarked police vehicle at about 2:00 a.m. on February 10, 2018, on the side of route 81 outside of Harrisburg, Pennsylvania, when he saw a car pass at approximately 45-50 mph in a zone where the speed limit is 65 mph. He could not see the driver of the car as it passed. Suspecting the driver was under the influence of an intoxicant, Johnson followed the car for about a half mile. At that point, the car had accelerated and was weaving about in its lane. When the car was going 75 mph, Trooper Johnson switched on his lights and caused the car to pull over to the side of the road. When the trooper activated the lights, the Dashcam on his vehicle automatically began recording, so we have a

3

clear record of what was said during the conversation that ensued.

Trooper Johnson approached the car and greeted its only occupant, Mr. Bradley. As is typical, he asked for Bradley's license and registration. Bradley promptly admitted that his driver's license was suspended and that the car was rented, so he instead gave the trooper an I.D. card and the rental information. When Bradley said that he had been cited for driving on a suspended license "a couple times," Johnson said in a cheerful way, "my man, I got bigger things to worry about, it's almost the end of my shift," and that they could "work through that" because it wasn't "a big deal." (Dashcam Video at 1:48-2:04.) Then, in the same sort of I'm-just-here-to-help tone of voice, Johnson told Bradley, "I'm going to bring you back to my car" to see if "I can cut you a break." (Dashcam Video at 3:03-27.) After a brief hesitation, Bradley got out of his vehicle and went with Johnson to the police car. Johnson patted down Bradley for weapons and, finding none, the two got into the car, with Johnson in the driver's seat and Bradley in the passenger seat.

Once in the car, Trooper Johnson asked Bradley a series of questions about where he was going and where he had been, all the while being remarkably solicitous. He made frequent comments to put Bradley at ease, such as "Take a deep breath, bud, take a deep breath," and he frequently called him "bro," "bud," and "my man." (Dashcam Video at 2:42-53; *see* Dashcam Video generally.) Under Johnson's questioning, Bradley said that he was on his way home from visiting his mother in a personal care facility in Queens, New York. He also said he had just been sentenced to two and a half years in prison for "drugs." (Dashcam Video at 4:30-11:00.) Johnson

4

continued his effort to build rapport with Bradley, asking him "When's the last time you've been cut a legitimate break, bro?" (Dashcam Video at 8:25-27.) At the same time, Johnson continued searching through Bradley's driving record and the rental car information. When asked about the rental car, Bradley explained that it was rented in his wife's name. The interrogation to that point had lasted about ten minutes.

Appearing to have finished processing the information related to the traffic stop, Johnson told Bradley that he was going to give him a warning for speeding and that he would not cite him for weaving in his lane of traffic. Despite those statements, however, it seems that Johnson never intended to let Bradley go with just a warning. He later acknowledged at the suppression hearing that he would not have let Bradley drive away. In fact, he said that from the beginning he suspected criminal activity of some kind. For that reason, he had called for backup, and at about that ten-minute mark in the stop, Corporal Brian Hoye arrived on the scene.

As Corporal Hoye approached the unmarked police car, Trooper Johnson began a more pointed line of questioning, focusing on the contents of the rental car. Specifically, he asked Bradley whether there were any guns, marijuana, large sums of U.S. currency, heroin, or cocaine in the car. Bradley denied having any of those items, but Johnson later testified that he "noticed a deviation in the way [Bradley] responded to the question of cocaine." (App. at 121.) Johnson asked again whether any of the previously listed things were in the car. By then, Corporal Hoye was standing next to where Bradley sat, and this time, flanked by state troopers, Bradley admitted he had cocaine.

Johnson then quickly recited the *Miranda* warnings,[1] telling Bradley he was "not free to leave." (Dashcam Video at 13:40-55.) Close to fifteen minutes of questioning had gone on, most of it in the police vehicle, before the warnings were given. Immediately thereafter, Johnson asked, "Now, how much cocaine is in the car?" (Dashcam Video at 13:55-57.) Bradley answered, "a lot." (App. at 123.) At that point, Johnson believed he had probable cause to search the vehicle. He asked Bradley where the cocaine was, and Bradley told him it was in the trunk. He handcuffed Bradley and left him in the care of Corporal Hoye while he went back to the vehicle to search for the cocaine. As Bradley had said, about a kilo of cocaine in a backpack was lying in the trunk of the car. The officers told Bradley he was under arrest for possession of cocaine with intent to distribute.

## B.     The Procedural History

After he was indicted and arraigned, Bradley filed a motion to suppress. In his briefing on that motion, he argued that Trooper Johnson had unlawfully prolonged the traffic stop and that the stop involved a custodial interrogation without the benefit of *Miranda* warnings. The government argued that the stop had not been unnecessarily prolonged, that Bradley was not in custody, and that no warrant was necessary under the automobile exception to the warrant requirement.[2]

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] *See generally California v. Acevedo*, 500 U.S. 565 (1991).

At the suppression hearing, Trooper Johnson and Bradley testified, and both parties played portions of the Dashcam video. In addition to recounting the incident, Johnson testified that, because of the suspended license, he would not have allowed Bradley to drive away. Instead, as a matter of routine, Bradley's vehicle would have been towed and the police would have conducted an inventory search of it. At the conclusion of the hearing, the District Court requested further briefing on the suppression motion, and Bradley responded in his post-hearing submission by arguing that his statements to Johnson were effectively involuntary because they were made under custodial interrogation and therefore the statements and physical evidence should be suppressed. The government argued that, even if Bradley's pre-*Miranda* statements were suppressed, his post-*Miranda* statements were voluntary and should be admissible in evidence, and it further contended that the cocaine would have inevitably been discovered when the rental car was impounded.

The District Court granted the motion to suppress Bradley's pre- and post-*Miranda* statements, as well as the evidence that was discovered in the vehicle as a result of those statements. The Court focused primarily on the admissibility of Bradley's statements: whether they were given as part of a custodial interrogation, and whether the post-*Miranda* statements were given voluntarily. *See generally United States v. Bradley*, 370 F. Supp. 3d 458 (M.D. Pa. 2019). It found that, at least from the time Corporal Hoye arrived on the scene, Bradley was subjected to custodial interrogation, and that Bradley's post-*Miranda* statements were not voluntary. In closing, it addressed whether the physical evidence should also be suppressed or whether it would have been inevitably discovered in an inventory search. The District Court decided

7

that the possibility of an inventory search was merely speculative, and it therefore ordered that the physical evidence, as well as Bradley's statements, be suppressed.

The government has timely appealed.

## II.   Discussion[3]

On appeal, the government argues only for the admissibility of the physical evidence seized from the rental car.  Its first argument is that the physical evidence should not be suppressed because the statements Bradley made before hearing his *Miranda* rights were voluntarily made.  It also argues that, in any event, the physical evidence would have been discovered in a lawful inventory search when the police impounded Bradley's vehicle.  The government has forfeited its argument concerning the pre-*Miranda* statements, but it successfully preserved its argument that the cocaine and related evidence would have been inevitably discovered in an inventory search.

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 18 U.S.C. § 3731.  In considering the outcome of a motion to suppress, "we review a district court's factual findings for clear error, and we exercise de novo review over its application of the law to those factual findings." *United States v. Goldstein*, 914 F.3d 200, 203 n.15 (3d Cir. 2019) (quoting *United States v. Katzin*, 769 F.3d 163, 169 n.4 (3d Cir. 2014) (en banc)).

### A. Argument Forfeiture

The government's argument about the voluntariness of Bradley's pre-*Miranda* statements is markedly different from the one it made before the District Court. There, its position was that, regardless of whether the pre-*Miranda* statements were illegitimately obtained, the post-*Miranda* statements were voluntary and sufficient to permit the search that yielded the physical evidence. Only now is it insisting that the pre-*Miranda* statements were voluntary and should be the focus of attention. Consequently, while the government rightly says that suppression is inappropriate when evidence has been discovered based on voluntary statements, *United States v. DeSumma*, 272 F.3d 176, 180-81 (3d Cir. 2001), that point is unpersuasive here, since the voluntariness of the pre-*Miranda* statements was not argued to the District Court, and the Court's ruling on the involuntariness of the post-*Miranda* statements has not been challenged before us.

The government, just like a defendant, is "subject to the ordinary rule that an argument not raised in the district court is waived on appeal[.]" *United States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010); *accord United States v. Stearn*, 597 F.3d 540, 551 n.11 (3d Cir. 2010). "[T]he argument presented in the Court of Appeals must depend on both the same legal rule and the same facts as the argument presented in the District Court." *United States v. Joseph*, 730 F.3d 336, 342 (3d Cir. 2013). "[T]he degree of particularity required to preserve an argument is exacting." *Id.* at 337. Thus, "fleeting reference or vague allusion to an issue will not suffice to preserve it for appeal." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 262 (3d Cir. 2009).

9

The government's claim that it preserved the voluntariness issue in its suppression motion briefing by citing to *Oregon v. Elstad*, 470 U.S. 298 (1985), without discussing how it applies to the facts of this case, does not satisfy that standard. It is apparent on this record that the government failed to argue before the District Court that the evidence should not be suppressed because the pre-*Miranda* statements were made voluntarily. Moreover, the government never invoked the legal rule it relies upon as dispositive on appeal, namely that the physical fruits of voluntary statements are admissible regardless of whether *Miranda* warnings were given. *DeSumma*, 272 F.3d at 180. The argument has thus been forfeited, and we will not consider it.

## B.    Inevitable Discovery

The government did, however, preserve its argument that, even without Bradley's statements, the physical evidence would have been discovered during a proper inventory search of the rental car. The District Court was unpersuaded, concluding that the possibility of such a search was speculative and that the government had thus not carried its burden of proving inevitable discovery. The government renews its argument now, and we see much more merit in it. Indeed, we disagree with the District Court's labeling as speculative the likelihood of an inventory search, but more work needs to be done to determine the lawfulness of the search of the backpack.[4]

---

[4] The government also argues that the cocaine would inevitably have been discovered through a search by a dog trained to detect drugs, but that argument fails. As Johnson himself admitted, while he suspected criminal activity from the

Evidence obtained by the police unlawfully may nonetheless be admitted into evidence "if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means[.]" *United States v. Vasquez De Reyes*, 149 F.3d 192, 195 (3d Cir. 1998) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). One lawful means by which the police may discover evidence is to conduct an inventory search of an impounded vehicle, as "inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987).

The government bears the burden of proving that evidence would have inevitably been discovered, and it can satisfy that burden by demonstrating that the police, following their routine procedures, would have uncovered it. *Vasquez De Reyes*, 149 F.3d at 195. An analysis of whether certain evidence would have been discovered in an inventory search, including whether an inventory search would have occurred at all, should be based "upon the historical facts capable of ready verification, and not speculation." *Id.*; *see also Nix*, 467 U.S. at 444 n.5 ("[I]nevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification[.]"). The government may establish routine police procedures by submitting them into evidence,

---

beginning of the traffic stop, his suspicions were "not necessarily [about] drug activity." Thus, as the District Court correctly observed, it is just speculation that, without Bradley's statements, Johnson would have called for a drug-detecting dog to come to the scene.

including by "testimony regarding standard practices." *United States v. Mundy*, 621 F.3d 283, 290 n.5 (3d Cir. 2010) (quoting *United States v. Thompson*, 29 F.3d 62, 65 (2d Cir. 1994)).

Here, the government argues that, whether or not Bradley ever said a word, the cocaine in the trunk of his car would have been found. According to the government, it established through the Dashcam evidence and the testimony of Trooper Johnson that Bradley was driving on a suspended license, that he therefore could not continue driving the car, that police procedure called for the vehicle to be towed and impounded, and that necessarily there would have been an inventory search that would have revealed the cocaine. None of that seems speculative to us. On the contrary, it tracks Pennsylvania law that requires the police to order a vehicle towed if the driver has a suspended license and towing is "in the interest of public safety." 75 Pa. Cons. Stat. Ann. § 6309.2(a)(1). And it is consistent with Johnson's testimony that he would not have let Bradley drive away, that Bradley's vehicle would have been impounded, and that there would have been an inventory search consistent with standard procedures.

Nevertheless, the District Court thought the testimony was speculative because Trooper Johnson "did not aver that protocol mandated that he tow and inventory Bradley's vehicle as a result of his suspended license." *Bradley*, 370 F. Supp. 3d at 477. The Court suggested that some alternative besides towing and impoundment would have been more consistent with Trooper Johnson's statement to Bradley that he would "cut him a break." (App. at 44.) But the existence of alternative methods of removing a vehicle from a snowy highway in the middle of the night does not negate Trooper

12

Johnson's sworn and unrebutted testimony of what police procedures called for and what he would have done even if Bradley had not confessed. That Johnson did not use the word "mandated" or some like term to describe the procedures he referenced is certainly not dispositive.

At the same time, Trooper Johnson testified that the cocaine was found in Bradley's backpack, which was lying in plain view in the trunk of the car. Police have discretion to inventory a closed container, no doubt, *see e.g.*, *Bertine*, 479 U.S. at 374, but only where there is evidence of a policy or regulation sufficiently limiting the scope of that discretion.[5] *See United States v. Salmon*, 944 F.2d 1106, 1120 (3d Cir. 1991), *abrogated on other grounds by United States v. Caraballo-Rodriguez*, 726 F.3d 426 (3d Cir. 2013) ("[T]he pre-existing criteria or routine must limit an officer's discretion regarding the scope of an inventory search, particularly with respect to the treatment of closed containers."); *see also Mundy*, 621 F.3d at 291–92 (internal quotation marks omitted) (holding lawful an inventory search of a container where department policy "specifically authoriz[ed] the search of the trunk if accessible" and "forb[ade] any locked areas, including the trunk area, from being forced open" because the policy sufficiently limited the scope of officer discretion when it "(1) authorized [the officer] to inventory any personal property of value left in the trunk once [the individual] provided the keys to it; and (2) simultaneously curtailed his authority to embark on a generalized search for incidents of crime").

---

[5] That is not to say that there must be a written policy or a regulation, but rather that there must be criteria or routines that govern inventory searches.

Given Trooper Johnson's testimony concerning police procedure and the course he would have taken once Bradley's ineligibility to drive had been revealed, and given that the cocaine was inside a backpack that was in plain view when the trunk of the rental car was opened, it seems probable that the police would have discovered the cocaine in an inventory search. But more information on police procedures – including protocols for the conduct of an inventory search and the scope of an officer's discretion during such a search – is likely needed before making a final determination on inevitable discovery. Thus, we ask the District Court on remand to reopen the record and take further evidence.

III.    CONCLUSION

For the foregoing reasons, we will vacate the District Court's order suppressing the physical evidence and remand the matter for further consideration.