NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1316
_____

UNITED STATES OF AMERICA

v.

ANTHONY GILBERT-BROWN,
                          Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-18-cr-0210-001)
District Judge:  Honorable Jennifer P. Wilson

_____

Submitted Under Third Circuit LAR 34.1(a)
November 18, 2021

Before:   AMBRO, JORDAN, and ROTH, *Circuit Judges*

(Filed: January 7, 2022)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Anthony Gilbert-Brown appeals the District Court's order denying his motion to suppress evidence. He argues that, under the Fourth Amendment, his car should not have been stopped, his subsequent arrest was unwarranted, and the police lacked probable cause to search his car. Because his arguments lack sufficient merit, we will affirm.

## I.    BACKGROUND

On the evening of February 19, 2018, Officer Bradley Engle of the York City Police Department was in pursuit of a stolen car. The occupants of the car eventually abandoned it near an intersection and fled on foot. Still in his patrol car, Officer Engle followed them down a one-way street but then lost sight of them. He then began to return to the now-abandoned car by turning on his emergency lights and driving his patrol car in reverse towards the intersection. Before he reached the intersection, however, another car blocked him from backing up any further. The driver of that car was Gilbert-Brown, and with him was another individual in the front passenger seat.

Officer Engle "chirped" his siren for Gilbert-Brown to back up. Gilbert-Brown obliged, and Officer Engle parked his patrol car in the middle of the intersection. He then got out of the patrol car and, because he wanted to block off all lanes of travel through the intersection, told Gilbert-Brown to turn around, both verbally and with motions using a handheld flashlight. Evidently intent on going through the intersection, Gilbert-Brown ignored Officer Engle and started slowly driving forward in an apparent attempt to "squeeze in between [the] patrol vehicle and the [stolen car]" in the intersection. (App. at 274.)

2

As Gilbert-Brown tried to go around the patrol car, Officer Engle approached and gave him additional commands to turn around. At one point, Officer Engle was close enough to make eye contact with Gilbert-Brown. Gilbert-Brown gave Officer Engle a "thousand-yard stare" through "bloodshot" eyes with a "glossy tint[.]" (App. at 13, 276, 281.) Officer Engle testified that, at that point, he concluded that an investigatory stop was necessary. He told Gilbert-Brown to stop, turn off his car, and get out of it, and he repeated the order several times.

Officer Engle's suspicion that something was wrong was confirmed when Gilbert-Brown responded to the commands by reversing his car, as if to attempt a three-point turn, only to place his car in drive and start moving directly at Officer Engle. The car collided with Officer Engle's left leg, but rather than stop driving, Gilbert-Brown continued forward slowly, pushing Officer Engle further back. At that point, fearing "serious bodily injury," Officer Engle drew his service weapon and fired four or five rounds at the windshield of the car. (App. at 4, 284.)

After Officer Engle fired his weapon, Gilbert-Brown backed up until he hit Officer Engle's patrol car. He then drove forward and brought his car, at last, to a stop. Officer Engle instructed Gilbert-Brown and the passenger to keep their hands up. Another officer with the York City Police Department, Paul Thorne, arrived at the scene and assisted in placing the two under arrest. Once Gilbert-Brown and the passenger were in custody, the officers conducted a search incident to arrest, recovering from Gilbert-Brown's person eleven clear plastic baggies and cash totaling $560.00.

While still at the scene, and pursuant to Pennsylvania State Police policy, the officers contacted the State Police Criminal Investigations Division, whose troopers would take over the investigation, as is required when there is an officer-involved shooting. Before the state troopers arrived, however, Officer Thorne observed a firearm "sitting in the center console" of Gilbert-Brown's car. (App. at 6, 220, 393.) The officers immediately recovered that item from the car, and also discovered a black digital scale, multiple bags of a "white chalky substance[,]" a bag of marijuana, an iPhone, a ripped vacuum-sealed bag, and a "magazine [with bullets] on the front passenger side floor board." (App. at 6, 218, 220, 398-99.)

After arriving on the scene, Trooper Jason Groff took possession of the evidence seized pursuant to the arrest and the items found in the car. Pursuant to State Police policy,[1] a trooper then inventoried the car for "valuables and other items." (App. at 6, 101.) That inventory search revealed, among other items, another firearm and ammunition "on the passenger side between the front seat and [the] door of the vehicle[.]" (App. at 7, 218, 238.) After the car was towed, Trooper Groff obtained a search warrant for the car, which yielded yet more drug and firearm paraphernalia, including a bag of crack cocaine.

A grand jury in the United States District Court for the Middle District of Pennsylvania indicted Gilbert-Brown for conspiracy to distribute and possess with intent

---

[1] That policy states that "[s]eized vehicles or other property shall be inventoried and processed whenever the property is taken into possession." (App. at 101.)

to distribute cocaine base (Count 1), three counts of distribution of cocaine base (Counts 2 through 4), possession with intent to distribute cocaine base (Count 5), and possession of a firearm in furtherance of a drug trafficking crime (Count 6). Gilbert-Brown pleaded not guilty and filed a motion to suppress all items seized by the officers at the scene, as well as those seized pursuant to the later-executed search warrant.

Following a hearing, the District Court denied Gilbert-Brown's motion. It found that Officer Engle's testimony was credible, and it concluded he had reasonable suspicion to stop Gilbert-Brown's car, as well as probable cause for the subsequent arrest and search. The Court also concluded that it was unnecessary to address whether probable cause justified Officer Thorne's on-site search of the car because, in view of Trooper Groff's testimony and Pennsylvania State Police policy, the state troopers would have inevitably discovered that evidence. Later, having struck a deal with the government that preserved his right to appeal the District Court's suppression ruling, Gilbert-Brown ultimately pleaded guilty to Counts 5 and 6 of the indictment and was sentenced to 180 months' imprisonment. This timely appeal followed.

## II. DISCUSSION[2]

On appeal, Gilbert-Brown contends that the District Court erred in finding Officer Engle credible and, as a result, made a number of other erroneous factual findings. He

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. §§ 1291 and 3742(a). On appeal from a denial of a motion to suppress, we review factual findings for clear error and exercise plenary review over questions of law. *United States v. Lewis*, 672 F.3d 232, 236-37 (3d Cir. 2012).

also argues that (i) Officer Engle lacked reasonable suspicion to conduct an investigatory stop of his car; (ii) Officer Engle lacked probable cause to arrest and search his person; and (iii) Officer Thorne lacked probable cause to search his car and could not otherwise justify the search under the inevitable discovery doctrine. None of those arguments withstand scrutiny.

**A.     The Investigatory Stop**

Generally speaking, for a seizure to be reasonable under the Fourth Amendment, it must be "effectuated with a warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002). Nevertheless, an officer may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *see also United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006) (The "*Terry* reasonable suspicion standard applies to routine traffic stops."). Gilbert-Brown claims that Officer Engle lacked reasonable suspicion to stop him and order him out of the car.

As the District Court found, however, Gilbert-Brown ignored Officer Engle after Engle "motioned to [him] with a handheld flashlight to turn around and go the other way and gave approximately five to six verbal commands to turn around." (App. at 13 (quotation marks and citation omitted).) Gilbert-Brown ignored the commands and drove into a crime scene while looking directly at Officer Engle with eyes that were "very bloodshot and had a glossy tint to them." (App. at 13, 281.) Officer Engle then ordered him to "stop the vehicle and get out and turn [the] vehicle off[,]" but he again ignored the

officer and actually drove the vehicle into him. (App. at 13, 283.) Looking at the totality of the circumstances, *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012), those constitute "specific, articulable facts" that gave Officer Engle reason to believe Gilbert-Brown was, at the very least, violating traffic laws. *Delfin-Colina*, 464 F.3d at 397; *see also* 75 Pa. Const. Stat. § 3733(a) (criminalizing willful failure to bring a vehicle to a stop when ordered to do so by a police officer).

### B.     The Arrest

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (quotation marks omitted). Gilbert-Brown attempts to rewrite the District Court's factfinding and argues that Officer Engle "tapped [o]n the window and tried to open the door to pull Gilbert-Brown out of the vehicle and told Gilbert-Brown to pull over and get out." (Opening Br. at 9.) Then, Gilbert-Brown says, when he attempted a three-point turn, Officer Engle "ran in front of Gilbert-Brown's vehicle … and shot at Gilbert-Brown causing him to crash into the cruiser[.]" (Opening Br. at 9.) In that telling, among other factual rewrites, Gilbert-Brown skips entirely his driving into Officer Engle's leg. Gilbert-Brown's counter-narrative fails to show any clear error in the District Court's factfinding. *See United States v. Williams*, 898 F.3d 323, 329 (3d Cir. 2018) ("A finding is clearly erroneous when[,] although there is evidence to support it, the reviewing court on the entire

7

evidence is left with the definite and firm conviction that a mistake has been committed." (quotation marks omitted)).

The District Court was free to accept the police officer's version of events. In that version, Gilbert-Brown ignored Officer Engle's repeated commands to stop driving, drove directly into him, and then crashed into the police cruiser. That provides more than sufficient facts to conclude that "an offense ha[d] been or [was] being committed by" Gilbert-Brown to warrant his arrest. *Estate of Smith*, 318 F.3d at 514. At a minimum, Officer Engle had probable cause to arrest Gilbert-Brown for violating 75 Pa. Cons. Stat. § 3733(a) (fleeing or attempting to elude a police officer), 18 Pa. Cons. Stat. § 2702(a)(2) (aggravated assault against a police officer), and 18 Pa. Cons. Stat. § 2705 (reckless endangerment of another person).

## C.      The Search of the Automobile

Lastly, Gilbert-Brown argues that the District Court improperly applied the inevitable discovery doctrine and, instead, should have addressed whether there was probable cause for a search of the automobile. We, again, do not agree. "Evidence obtained by the police unlawfully may nonetheless be admitted into evidence if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *United States v. Bradley*, 959 F.3d 551, 557 (3d Cir. 2020) (quotation marks omitted). The Supreme Court has recognized an exception to the Fourth Amendment's warrant requirement when there are "reasonable police regulations relating to inventory procedures administered in good faith[.]" *Colorado v. Bertine*, 479 U.S. 367, 374 (1987). Here, Pennsylvania State

8

Police policy requires an inventory search for vehicles in the custody of state troopers. Thus, regardless of the search at the scene, Gilbert-Brown's car would certainly have been subjected to an inventory search pursuant to that policy, which would have led to the discovery of the evidence in his car.

Having found that the inevitable discovery doctrine applies, we need not reach the issue of probable cause.[3]

## III. CONCLUSION

As the District Court did not err in denying Gilbert-Brown's motion to suppress, we will affirm.

---

[3] Even if it were assumed the evidence would not have been inevitably discovered, Gilbert-Brown would have a difficult time making the case that, despite a gun being in plain view, there was no probable cause to search his car. See *Horton v. California*, 496 U.S. 128, 128 (1990) ("The Fourth Amendment does not prohibit the warrantless seizure of evidence in plain view[.]"). And under the "automobile exception" to the warrant requirement, the officers did not need a warrant to search the car once they had probable cause. *See Maryland v. Dyson*, 527 U.S. 465, 467 (1999) ("[U]nder our established precedent, the 'automobile exception' has no separate exigency requirement. … [I]n cases where there [is] probable cause to search a vehicle[,] a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained." (quotation marks and emphasis omitted)).