IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

PEOPLE OF THE VIRGIN ISLANDS,    )    CASE NO. ST-2019-CR-00253
    )
        Plaintiff,    )
    )
  vs.    )
    )
CODERO LAKE    )
    )
        Defendant.    )
    )

Cite as 2022 VI Super U10

## MEMORANDUM OPINION

¶1    This matter is before the Court on Defendant's Motion to Suppress a firearm, drugs, and a statement allegedly made by Defendant, Codero Lake ("Lake"), while being processed at the Virgin Islands Police Department station.[1]

¶2    The motion came on for hearing on September 23, 2021, in person. The People of the Virgin Islands ("the People") were represented by Assistant Attorneys General Eugene J. Conner, Jr. Lake appeared and was represented by Assistant Public Defender Paula D. Norkaitis. For the reasons set forth herein, the motion will be denied.

---

[1] Lake's motion to suppress was filed on November 16, 2020. The People filed an Opposition on July 20, 2021.

## BACKGROUND AND PROCEDURAL POSTURE

¶3    On October 28, 2019, Lake was arrested and ultimately charged with unauthorized possession of a machine gun in violation of V.I. CODE ANN. tit. 14 § 2253(b)(d)(2), unauthorized possession of firearm, in violation of V.I. CODE ANN. tit. 14 § 2253(a), unauthorized possession of ammunition in violation of V.I. CODE ANN. tit. 14 § 2256(a) and delaying and obstructing in violation of V.I. CODE ANN. tit. 14 § 1508.

¶4    At a suppression hearing held on September 23, 2021, the People called one witness: Virgin Islands Police Department ("VIPD") Deputy Chief Richard Velazquez ("Velazquez"). Velazquez has approximately thirty-years of law enforcement experience. The parties stipulated to the admission of the People's and Lake's exhibits.

¶5    Lake argues that VIPD's actions constitute an unlawful search and seizure within the meaning of the Fourth Amendment because the officers did not have probable cause to conduct a warrantless search of the black bag found in the vehicle Lake was travelling in. Lake also argues that his alleged statements were made while he was in custody and that they were elicited without a knowing and voluntary waiver, in violation of his Fifth Amendment right against self-incrimination. For these reasons, Lake argues the contents of the black bag, and his statements should be suppressed.

## FACTS

The Court finds the following facts from the suppression hearing.

¶6    On October 25, 2019, Velazquez, and VIPD Officer Aliek Wescott[2] were conducting an investigation in Port of Sale Mall in St. Thomas, United States Virgin Islands. At approximately, 11:15 p.m., Velazquez, while standing near one of the businesses, observed a yellow, four-door Jeep Wrangler ("vehicle"), driving through the Port of Sale Mall parking lot. Velazquez testified that the area in which the vehicle was driving was well lit and that as the vehicle drove past him, he observed that the driver was not wearing a seatbelt. Velazquez then directed the vehicle to stop and started to approach it on foot. Velazquez testified that when he was approximately twelve to eighteen inches from the vehicle, he began to smell marijuana as the driver's window was down.

¶7    When Velazquez asked where the marijuana smell was coming from the person later identified as Lake held up a partially smoked marijuana cigarette. After obtaining the driver's license, Velazquez directed Lake and the driver to step out of the vehicle and stand to the rear of the vehicle for purposes of officer safety. Velazquez then asked whether he would find anything in the car, and they said no. He asked them whether either of them had a permit for a firearm, and they said no. He then asked if there was a firearm in the vehicle, and they said no. He also asked if he would find marijuana in the vehicle to which Lake said yes.

---

[2] As of the date of the suppression hearing, Officer Wescott was no longer a member of VIPD.

¶8     Velazquez testified that he searched a zipped, black Gucci messenger style bag in the backseat of the vehicle. Velazquez then unzipped the black bag and proceeded to conduct a search of the bag's contents while Lake and the driver were outside the vehicle. In the bag, Velazquez found a clear glass container, a digital scale, and small bags. Thereafter, Velazquez unzipped and reached into the pocket of the black bag and felt what he perceived to be a magazine for a firearm. Velazquez unzipped and discovered a Glock magazine. Velazquez asked who the bag belonged to, and Lake claimed ownership.

¶9     After finding the magazine, Velazquez attempted to place Lake under arrest for unlawful possession of ammunition. However, Lake ran from the area, but with the help of other officers, Lake was apprehended. Lake struggled against Velazquez's grasp and kept attempting to grab for something on his waist. Velazquez then used a gut-wrenching technique to bring Lake to the ground and secure his arms. Velazquez testified that after they secured Lake and rolled him on his back, a Glock firearm had fallen onto the ground from somewhere on Lake's person. The Glock magazine found in the vehicle matched the Glock firearm that fell from Lake's waist. The officers then transported Lake to the VIPD Callwood Command booking room to arrest him for the firearm.

¶10     Velazquez testified that as they were entering the booking room, Lake spontaneously uttered that he needed the firearm to protect himself because he had been shot before. Velazquez testified that at the time the statement was made, Lake

had not yet been *Mirandized*, but that he did not intend to ask Lake any questions. No seatbelt citation was issued after a weapon was found on Lake.

¶11 Velazquez conceded that neither Lake nor the driver consented to the search and that as he was searching the vehicle, he did not fear for his safety. Velazquez advised Lake of his *Miranda* rights after they got to the station.

## LEGAL STANDARD

¶12 Defendant challenges the lawfulness of the officers' search and seizure under the Fourth Amendment. The Fourth Amendment guarantees the right of people "to be secure in their persons . . . and effects, against unreasonable searches and seizures." *Whren v. United States*, 517 U.S. 806, 809 (1996). "No right is held more sacred, or carefully guarded. . . than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (quoting *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251 (1891)). Where an officer "restrains [a] person's freedom to walk away," the officer has effectuated a seizure, and that seizure must be reasonable. *Blyden v. People of the V.I.*, 53 V.I. 637, 647 (V.I. 2010) (citing *Brown v. Texas*, 443 U.S. 47, 50 (1979)); *People v. Rojas*, No. ST-17-CR-278, 2018 WL 4352113, at *2 (V.I. Super. Ct. May 31, 2018). "What is reasonable depends upon all the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *U.S. v. Ubiles*, 224 F.3d 213, 216 (3d Cir. 2000) (quoting *United States v. Montoya de Hernandez*, 473 U.S. 431, 537 (1985).

¶13    On a motion to suppress, once it is shown that a search or seizure was performed without a warrant "the government bears the burden of showing that each individual act constituting a search or seizure" was reasonable under the Fourth Amendment. *Rojas*, 2018 WL 4352113 at *2; *People of the V.I. v. Cornelius*, Crim. No. ST-11-CR-546, 2013 V.I. LEXIS 151, *2 (V.I. Super. Ct. Nov. 4, 2013); *People of the V.I. v. Samuel*, No. SX-09-CR-557, 2010 V.I. LEXIS 80, *8 (V.I. Super. Ct. Nov. 12, 2010) (citing *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995)). Warrantless searches and seizures are per se unreasonable, subject only to a few "well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1976) (footnote omitted); *see Ubiles*, 224 F.3d at 217; *People of the V.I. v. Looby*, 68 V.I. 683, 694-95 (V.I. 2018). For instance, where an officer has "reasonable and articulable suspicion of criminal activity," the Fourth Amendment allows for a limited search and seizure without a warrant or probable cause. *Terry*, 392 U.S. at 21; *see Blyden*, 53 V.I. at 647-48 (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975)).

¶14    "The principal components of a determination of reasonable suspicion or probable cause [are] the events leading up to the stop or search." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). In all cases, the officer's suspicion must be "more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (citing *Terry*, 392 U.S. at 27) (internal quotations omitted); *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006); *Ubiles*, 224 F.3d at 217; *Looby*, 68 V.I. at 695; *Rojas*, 2018 WL 4352113 at *2.

¶15    For a traffic stop, "the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain a vehicle and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). In a traffic stop, "the police officer effectively seizes everyone in the vehicle, the driver and all passengers." *Id.* at 332.

¶16    Where a warrantless search or seizure has occurred, the burden shifts to the People to demonstrate by clear and convincing evidence that the officers' actions fell within a recognized exception to the warrant requirement. *People v. Inecia*, 2019 VI Super 93U, ¶¶ 20-21.

## ANALYSIS

¶17    This Court is presented with the issues of whether (I) the seizure of Lake, as a passenger of a vehicle involved in a police traffic stop, was lawful; (II) whether there was sufficient probable cause to search the vehicle; (III) whether the discovery of the firearm stems from an illegal search; and (IV) whether Lake's statement made at the VIPD station should be suppressed as a fruit from a poisonous tree.

### I.    **The seizure of Lake during a traffic stop was valid and lawful**.

¶18    Lake argues that his Fourth Amendment rights were violated when Velazquez seized Lake and did not permit him to leave the area while Velazquez was performing a traffic stop of the vehicle in which Lake was a passenger.

¶19    Traffic stops are unreasonable under the Fourth amendment when there is no articulable or reasonable suspicion that the vehicle or occupant is subject to seizure

for violation of law. *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). Under the law of the Virgin Islands, "[n]o person may operate a motor vehicle unless the operator and *any passenger* in the front seat of the vehicle are restrained by a lap and shoulder restraint . . . ." V.I. Code Ann. tit. 20 § 466(b) (emphasis added). Here, the facts demonstrate that the vehicle was pulled over because the driver was not wearing a seatbelt. Velazquez testified that when he noticed the infraction, the vehicle was in a well-lit area, and it passed in front of him. As such, given that Velazquez had sufficient basis to believe that a traffic violation was committed, the traffic stop was lawful.

¶20 The passenger of a car is also seized during a traffic stop within the meaning of the Fourth amendment. *Brendlin v. California*, 551 U.S. 249, 255-57 (2007) (noting that "any reasonable passenger would have understood the police officers to be exercising control to the point that no one in the car was free to depart without police permission); *Prouse*, 440 U.S. at 653 ("stopping an automobile and detaining its occupants constitute a "seizure" within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief.").

¶21 A lawful traffic stop was made, and Velazquez acted within the law when he ordered the driver and passenger to step out of the car to perform an investigation. *See Brendlin*, 551 U.S. at 258 (clarifying that "an officer may order a passenger out of the car as a precautionary measure, without reasonable suspicion that the

passenger poses a safety risk."). Therefore, Velazquez's seizure of Lake was not illegal under the Fourth Amendment.

II.    **There was probable cause to search the contents of Lake's bag**.

¶22    Lake further argues that the search of his black bag violated his Fourth amendment right because it was performed without a properly authenticated warrant. Lake also contends that the search of the bag was not conducted for the safety of the officer, but that the officer was specifically looking for marijuana. Velazquez did concede that he was not in fear of his life while conducting the search. But it is well settled that the smell of marijuana can establish reasonable suspicion that marijuana is present in a place; but, given certain circumstances, the smell can cause that suspicion to rise to probable cause. *Looby*, 68 V.I. at 698 ("the scent of marijuana . . . alone may be sufficient to establish reasonable suspicion or even 'probable cause' to conduct further investigation into possible criminal acts or evidence of contraband."); *Ramos*, 443 F.3d at 308 (probable cause may be established if the smell of marijuana is articulable and particularized). And "police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991).

¶23    In this case, Velazquez lawfully stopped the vehicle because the driver was not wearing a seatbelt. As Velazquez approached the vehicle, he smelled marijuana emanating from the driver's window when he was about twelve to eighteen inches from the vehicle. Lake exposed a partially burnt marijuana cigarette to Velazquez when asked where the marijuana smell was coming from. And when asked if there

was more marijuana in the car, Lake answered in the affirmative. Put together, these facts provided Velazquez with probable cause to believe that Lake possessed more marijuana and, probable cause to conduct a search of the vehicle and its contents. *See Looby*, 68 V.I. at 701-03.

¶24    1Lake argues that the decriminalization of marijuana in the Virgin Islands made the search of the vehicle illegal. The Court disagrees, as the V.I. Supreme Court has found "that the Legislature's intent . . . was only to reduce criminal liability for possessing small quantities of the substance, while at the same time, keeping marijuana as a controlled substance subject to seizure by law enforcement, regardless of amount." *Id.* at 697.

### III.    <u>The firearm found on Lake is not fruit of a poisonous tree</u>.

¶25    In Lake's motion to suppress, he requests this Court suppress evidence of the firearm found on his person, arguing that it is fruit of an illegal search and seizure. Lake cites to several cases that discuss the exclusionary rule to argue that the contents of his bag and the firearm should be suppressed. But Lake's arguments rely on the presumption that there was an illegal search and seizure. Here, as described above, VIPD's seizure of Lake was lawful since Velazquez had observed the driver was not wearing a seatbelt, which is a traffic violation that supports a traffic stop. Velazquez, thereafter, smelled marijuana emanating from the vehicle and Lake manifested that he was in possession of a marijuana cigarette. Therefore, the cases that Lake relies upon that discuss the exclusionary rule and the fruit of the poisonous tree are not applicable.

¶26    The People, on the other hand, do not discuss the suppression of the firearm at all. The People's opposition to the motion to suppress requested the motion be denied on the grounds that there was a lawful basis to stop the vehicle and then to search the vehicle. Nevertheless, the subsequent discovery of the firearm was made during the lawful arrest of Lake for possession of ammunition. Therefore, the firearm was not obtained through an illegal search or arrest and does not constitute fruit of a poisonous tree.

## IV.    <u>The statement made by Lake at the VIPD station does not fall under the fruit of a poisonous tree doctrine</u>.

¶27    Velazquez testified that upon entering VIPD station, Lake stated, unprompted, that he needed the firearm to protect himself because he had been shot before. Lake argues that this statement should be suppressed because it was elicited without a voluntary waiver of his rights against self-incrimination and right to counsel. Lake's written motion contends that he was interrogated throughout the search and seizure interaction with the officers and that there had been no showing that he voluntarily waived his Fifth and Sixth Amendment rights.

¶28    The People's opposition does not address Lake's arguments regarding the statement he made. Velazquez conceded that when Lake made that statement, he had not been read his *Miranda* rights; however, Velazquez testified that he had no intention to ask Lake any questions and Lake volunteered the statement. Velazquez called it an "excited utterance." But more importantly, no evidence was adduced

during the suppression hearing that supports Lake's argument that Lake was still being interrogated when he was being transported to the booking room.

¶29    The Third Circuit has held that "the fruit of the poisonous tree doctrine does not apply to derivative evidence secured as a result of a voluntary statement obtained before Miranda warnings [have been] issued." *U.S. v. DeSumma*, 272 F.3d 176, 180 (3rd Cir. 2001). It has also been found that the exclusionary rule will apply in the specific circumstance where statements are obtained not only in violation of *Miranda* but also obtained involuntarily. *U.S. v. Bass*, Crim. No. 2016-0018, 2017 WL 1027027, at *5 (D.V.I. Mar. 15, 2017) (unpublished); *U.S. v. Rose*, 189 F. Supp. 3d. 528, 537 (D.V.I. 2016).

¶29    In this case, the Court is not aware of any coercive tactics or interrogation that occurred to elicit the statement from Lake. And no such evidence was presented during the suppression hearing. Thus, the Court finds that though Lake was in custody[3] by the time he made the statement, and he was not under interrogation[4]. *Bass*, 2017 WL 1027027, at *3 (cleaned up). The statement, therefore, is not fruit of a poisonous tree as claimed by Lake.

---

[3] "A suspect is in custody when there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Bass*, 2017 WL 1027027, at *3.
[4] "An interrogation has been defined as (a) conduct intentionally designed to evoke a confession, as well as (b) any conduct an officer should reasonably have foreseen would elicit an inculpatory response." *Id.*

## CONCLUSION

¶30   The Court finds Velazquez had probable cause to conduct a traffic stop after he observed the driver not wearing a seatbelt. Velazquez then smelled marijuana and noted that Lake was holding a marijuana cigarette. Then Lake admitted there was marijuana in the vehicle. This gave Velazquez probable cause to search the vehicle, including the bag. That lawful search revealed a firearm. Thus, the firearm was not a fruit of a poisonous tree. After his arrest, Lake made a voluntary statement, which was not a fruit of a poisonous tree. Therefore, Lake's Motion to Suppress will be denied.

An Order consistent herewith will immediately enter.

DATED: January 27, 2022

_Kathleen Mackay_
**Kathleen Mackay**
Judge of the Superior Court
of the Virgin Islands

**ATTEST**:
**TAMARA CHARLES**
Clerk of the Court

BY: _____
for **LATOYA CAMACHO**
Court Clerk Supervisor 01 / 27 / 22

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

PEOPLE OF THE VIRGIN ISLANDS,      )
                                   )      CASE NO. ST-2019-CR-00253
                    Plaintiff,     )
        vs.                        )
                                   )
CODERO LAKE                        )
                                   )
                    Defendant.     )
_____)

## ORDER

This matter is before the Court on Defendant's Motion to Suppress.

In accordance with the Memorandum Opinion entered on this day, it is hereby

**ORDERED** that Defendant's Motion to Suppress is **DENIED**; and it is further

**ORDERED** that a copy of this Order and the Memorandum Opinion shall be

served upon the Defendant and copies distributed to Assistant Attorney General

Eugene James Connor, Jr. and Chief Public Defender Samuel Joseph.

DATED: January 27, 2022

_____
**Kathleen Mackay**
Judge of the Superior Court
of the Virgin Islands

**ATTEST**:
**TAMARA CHARLES**
Clerk of the Court

BY: _____
for **LATOYA CAMACHO**
Court Clerk Supervisor 01 / 27 / 22